IOWA-MINNESOTA LAND COMPANY, Appellant, v. L. L. CON-
NER, L. J. CONNOR, JESSIE I. MALSED, ALEXANDER
MALSED, Executors of the estate of NIAL McDONALD,
deceased.

**Action on land contract:** COUNTERCLAIM BY EXECUTORS. The executors of an estate may interpose any defense of counterclaim, to an action on a contract made by deceased, which is permissible in an ordinary law action.

**Pleading:** WAIVER. By answering, any error in overruling a demurrer is waived.

**Contracts:** CERTAINTY: ACTION FOR BREACH. An agreement to erect a store building on certain premises at a location to be thereafter selected, to keep a stock of goods and to conduct a general mercantile business therein, is sufficiently definite to support an action for its breach, although it might be otherwise if specific performance was demanded.

**Same:** CONDITION PRECEDENT: BURDEN OF PROOF. Under a contract to erect a building within a specified time at some convenient place to be thereafter agreed upon, the agreement as to location is not a condition precedent to a right of action for breach of the contract; and the burden is upon the party relying on such agreement to show that his breach was the result of failure of the other party to act when requested.

**Breach of contract:** MEASURE OF DAMAGES: LICENSEES. As bearing on the measure of damages in an action for breach of agreement to erect a store building, install a stock of goods and conduct the business, it will be presumed in the absence of specific provisions, that the parties contracted with reference to what was customary in that vicinity; and where the store is to be erected and the business conducted on the premises of

one of the parties it will be assumed that the other party in erecting the building would have the right therein of a licensee at least.

**Same:** UNCERTAIN DAMAGES. The measure of damages for breach of contract to erect buildings and conduct a business upon the premises of another is the extent to which a performance of the agreement would have enhanced the value of the premises; and the fact that the same may be uncertain and difficult of ascertainment is not ground for their disallowance.

**Contracts:** PERFORMANCE: EVIDENCE. A deed to premises which the grantee should have received upon making payment therefor is competent on the question of his performance of the contract of purchase.

**Measure of damages:** EVIDENCE. Witnesses who have shown themselves qualified to speak of the market value of land, as bearing on the measure of damages for breach of contract, should be allowed to testify regardless of the difficulty in making an estimate of the damages.

**Same.** Evidence of the price paid for land has no bearing on the question of damages for failure to improve the same as agreed and should be excluded.

**Breach of contract:** WAIVER: EVIDENCE. The question of waiver of an agreement to erect a store building and conduct a business therein, in an action for a breach of the condition, is held under the evidence to have been rightfully submitted to the jury.

**Damages:** EXCESSIVE VERDICT. The evidence is held to support a finding that had a store building been erected upon a section of land and a business conducted therein as agreed the value of the land would have been enhanced $4 per acre.

*Appeal from Franklin District Court.*— HON. J. H. RICHARD, Judge.

WEDNESDAY, JULY 3, 1907.

REHEARING DENIED MONDAY, DECEMBER 16, 1907.

NIAL McDONALD died testate in October, 1904, and the defendants are the duly appointed executors of his estate. On the twenty-second day of March, 1905, the plaintiff filed a petition in the district court against them as such

executors, praying for the establishment of a claim for the amount due on the contract for the sale of two hundred and forty acres of land to deceased. The executors admitted there to be due plaintiff on the contract the amount alleged, $2,225, but pleaded a counterclaim based on a similar agreement, wherein plaintiff stipulated that upon the conveyance of ten acres of land in Hamilton county, Iowa, at the price of $2,500 and the payment of the balance at the rate of $10 per acre in payments, it would convey to deceased section 13, in township 138 north, range 28 west, of fifth P. M., situated in Crow Wing county, Minn., excepting a railway right of way through the land, that it would also erect or cause to be erected a store building on said premises and cause to be installed a stock of goods therein. The deceased performed his part of the contract, but plaintiff wholly failed to construct the store building as agreed, and defendants allege that, had this been done, the land would have been worth $10 per acre, and, owing to the omission of the plaintiff to perform its agreement, the deceased was damaged in the sum of $3,135, for which they demanded judgment. The jury returned a verdict for the defendant in the sum of $372, and judgment was entered thereon. The plaintiff appeals.— *Affirmed.*

*Taylor & Evans,* for appellant.

*John M. Hemmingway,* for appellee.

LADD, J.— The amount claimed by the Iowa-Minnesota Land Company as the balance due on a contract for the sale of land to the deceased, Nial McDonald, was admitted by

1. ACTION ON LAND CONTRACT: counterclaim by executors.
the executors of his estate. They set up a counterclaim for damages resulting to him from a breach of a like contract. The plaintiff moved that its claim be allowed on the ground that it had been admitted, and that a court in probate was without

jurisdiction to hear and determine matters pleaded in the counterclaim. This motion was overruled, and rightly so. The action was not in probate. The plaintiff elected to prosecute its claim by ordinary proceedings in the district court. Having filed its petition therein, the executors had the right to interpose by way of answer any defense thereto or counterclaim permissible in such an action. The contract sued on was breached, if at all, during the lifetime of the deceased, and a claim for damages occasioned thereby might be asserted by the executors. See *Willard v. Friedlick,* 31 Mich. 431; 18 Cyc. 507. The district court had jurisdiction to hear and determine the cause of action set up in the counterclaim, as well as that alleged in the petition. *Clough v. Ide,* 107 Iowa, 669.

II. A demurrer to the counterclaim was overruled. Error in so doing, if such it were, was waived by answering to the merits. *Frum v. Keeney,* 109 Iowa, 393; *Marshal Ice Co. v. La Plant,* 136 Iowa, 621.

2. PLEADING: waiver.

III. The deceased purchased section 13, in township 138 north, of range 28 west, of the fifth P. M., in Crow Wing county, Minn., on the 17th of March, 1903, and as a part of the contract, it was agreed " that the said Iowa-Minnesota Land Company shall erect, or cause to be erected, either by themselves or some other party, a store building on the above-described land at some convenient place to be hereafter agreed on by the said Iowa-Minnesota Land Company and the said N. McDonald; said site, however, to be not more than forty rods from the right of way of the present railroad running through the above-described land, said building to be erected during the season of 1903, a stock of general merchandise to be kept therein and a general merchandise business carried on." This was undertaken, it must be assumed, as a part of the consideration for which the purchase price was paid. The plaintiff objected to the introduction of this contract in evidence on three grounds: (1) That the stipulation with respect to the erection of a

store building and placing a stock of goods therein was too indefinite to be enforced; (2) that the duty of seeing that a site was selected devolved upon deceased as a condition precedent; and (3) that the damages resulting from a breach were too remote and speculative.

Taking these propositions up in the order named, it must be conceded that the contract is not as specific as it might have been. This, however, is not an action for specific

3. CONTRACTS: certainty: action for breach.

performance. Had it been, some difficulty might be experienced in determining the size of the building to be erected, as well as the extent of the stock of goods to be installed. It is to be presumed, however, that such a store and stock were contemplated by the parties as would fairly accommodate the trade of that locality. The plaintiff was bound under this agreement to erect a building reasonably adapted to use as a store, and to install a stock of goods such as might reasonably be expected to meet the needs of the community. That such improvements need not be more specifically described in order to render the party promising to make them liable for failing to do so appears from *Wilson v. Yocum,* 77 Iowa, 569. See *Fraley v. Bentley,* 1 Dak. 25 (46 N. W. 506). In the first of these cases none of the improvements agreed to be made were described, and yet the court held the agreement sufficiently specific as a basis for damages. It is said that the building would be of no consequence without a stock of goods, and that the agreement does not provide that the stock is to be placed in the building by plaintiff, or that it is to carry on a general mercantile business. It is stipulated, however, that the stock shall be kept therein and the business carried on. While plaintiff did not undertake to do this, it did agree that this would be done. No time within which the stock was to be installed is expressly indicated, but the rule is well settled that, where a person undertakes to do a thing, it is to be inferred that he will perform within a reasonable time. The erection of a build-

ing necessarily must have preceded the installation of the stock, and, as neither was done, there was a breach of both undertakings. We think the contract sufficiently definite under the decisions cited to render plaintiff liable for its breach.

IV. The location of the store was "to be hereafter agreed upon between" the parties. Appellant insists that an agreement on the location was a condition precedent to the right of action, and that such an agreement or an excuse for not making it should have been alleged in the petition and proven.

4. SAME: condition precedent: burden of proof.

The time for the erection of the building was specified, so that no demand was essential. It was to be located at a convenient point on the premises not more than forty rods from the right of way of the railroad. It was optional with the plaintiff when it would begin the building, as the contract only required that it be constructed within a certain time. No affirmative action was essential on the part of the deceased to render the stipulation binding. If he refused to negotiate or agree with respect to a suitable location, that was a matter of excuse or defense for not erecting the building. The burden was upon the plaintiff to perform its obligation, and, until it had indicated its purpose to do so, deceased was not called upon to act. The plaintiff was required to do all that was necessary for its part in order to construct the building within the time stipulated. McDonald was not in default, and could not have been, save by refusing to agree upon a site. To hold otherwise would require the deceased to take the initiative in the matter of carrying out the obligation plaintiff had undertaken. It was only incumbent on the executors to prove the plaintiff's breach; and, if this was due to the fault of deceased, that was a matter of defense.

V. As bearing on the measure of damages, the appellant suggests a great many inquiries, and first as to the amount of stock to be carried and the hours the store should

be open.  The parties may be presumed to have contracted

with reference to what is usual and custom-

5. BREACH OF
CONTRACT:
measure of
damages:
licensees.

ary in the vicinity of the place where the store was to be located.  To whom was the store building to belong?  Under the terms of the agreement, it was to be erected or caused to be erected on the land of deceased, and, as the latter agreed to this, it may be assumed that the person erecting it would be a licensee at least.  Farther than this the question is not material.

VI.  The executors alleged that had this store building been erected and the stock of goods installed as agreed the value of the section of land would have been enhanced

thereby, and the evidence tended so to show,

6. SAME: uncer-
tain damages.

and under the ruling of *Wilson v. Yocum,* *supra,* the defendants were entitled to recover on their counterclaim the amount, if any, that the improvement would have increased such value.  In that case the writer of the opinion undertook to distinguish it from *First National Bank v. Thurman,* 69 Iowa, 693.  In the *Wilson case* the measure of damages alleged was the extent to which the improvements, if made, would have increased the value of the land, while in *First National Bank v. Thurman* such measure was averred to be the difference between the value of the plaintiff's building as it was and would have been had the improvement been made as agreed.  The distinction, if any, was too fine for some members of the court, as it had been for the writer who ruled on the demurrer in the *Wilson case* at *nisi prius*.  The doctrine of *Wilson v. Yocum,* however, has our approval, and sustains the conclusion that the damages claimed by defendants are neither remote nor speculative.  They may be uncertain and difficult of ascertainment but this furnished no reason for not allowing such as may be proven under the well-established rules of evidence.  *Hichhorn v. Bradley,* 117 Iowa, 130; *Rule v. McGregor,* 117 Iowa, 419..

VII.  Deceased, upon payment of the consideration

named in the contract, was to receive the deed of convey-
ance of the land from the plaintiff.   A deed

7. CONTRACTS:
performance:
evidence.

of the land to him was received in evidence
over objection.   The ruling was correct, as it
tended to prove performance on the part of the deceased.

VIII.   Plaintiff objected to the testimony of several
witnesses of what the market value of the land was and
what it would have been had the improvements been made.

8. MEASURE OF
DAMAGES:
evidence.

These witnesses were qualifid to speak, and,
regardless of the difficulty of making such an
estimate, testified positively to values show-
ing a difference of $3 or $4 per acre.   The evidence was
admissible.   *First National Bank v. Thurman,* 69 Iowa,
694, in so far as inconsistent with the ruling, was overruled
by *Wilson v. Yocum, supra.*

IX.   One Grimes was asked to state the value of the
ten acres of land exchanged by deceased for section 13.   The
evidence was properly excluded, as having no bearing on

9. SAME.

the issue being tried.   The measure of dam-
ages was the enhancement in value which
would have resulted from the erection of the building for
the purposes contemplated, had this been done, and there-
fore the price paid for the land was in no way involved.

X.   Plaintiff pleaded that deceased had waived the
erection of the building, and, in support of this issue, James
Santee testified that, when looking at another tract of land

10. BREACH OF
CONTRACT:
waiver:
evidence.

near by in the fall of 1903, McDonald said to
him that there were no highways to go in
and no good place for a store on the land, and
that he would not put a store there, and that " we do not
want a store there."   Though testifying that he informed
Santee Bros. of this, it does not appear that he was directed
to do so by the deceased, or that the deceased spoke to him
as the representative of plaintiff.   Nor is there any evidence
that Santee Bros. communicated this information to the
plaintiff.   True, James Santee, not a member of the firm,

was employed by Santee Bros. to negotiate a sale of section 13 in March, 1903; but there is nothing to indicate that the firm had any connection with it thereafter. C. B. Santee executed this contract as general manager of the plaintiff, but there is no evidence that he was a member of the firm, though this is admitted in argument. Under these circumstances we do not regard the evidence conclusive as to the intention of deceased to relieve plaintiff from this obligation. Indeed, the letter signed Santee Bros., and admitted by appellant in argument to have been written by James Santee, tends to contradict the claim, for it is there said, " We have not got the store built, but we have everything fixed now, we think, and we are going to try to get our store as soon as possible there now." This is objected to as not relating to the matter involved in this action. It purported to relate thereto, and that is enough to justify its admission in evidence. If susceptible of explanation disconnecting it therewith, this was not undertaken. The very fact that James Santee wrote such a letter, even though it related to the erection of the store on another tract of land, instead of that in question, tends strongly to rebut his testimony that the promise to erect a store was waived. It is immaterial whether the letter was connected with plaintiff in any way. It is enough that it was written by James Santee and tended to contradict his testimony. Conner, one of the executors, related that C. B. Santee, the manager of the company, in conversing about the claim, had said there was nothing to prevent locating a town there yet, but did not mention that McDonald had waived this, but insisted that there was a flaw in the contract. This evidence was also pertinent and admissible as a circumstance tending to rebut the claim that McDonald had waived the fulfillment of the agreement. It is conceded in argument that the letter of January 14, 1905, written in response to a letter from the attorney now representing defendants, was by C. B. Santee. If so, it was admissible for the purpose above indicated. The fact that these

parties were corresponding concerning this feature of the contract, without mentioning any waiver, was a strong circumstance to be considered by the jury as rebutting the testimony of James Santee heretofore referred to. The letter of the attorney was admissible only as explaining the letter of Santee Bros. written in response thereto. He was not shown to have been employed by defendants at the time it was written, and they are not bound by what was said by him concerning any change in the contract. We are of the opinion that in view of the evidence alluded to the issue of waiver was rightfully submitted to the jury.

II. Appellant contends that the verdict is excessive. The railroad passing through the land is not connected with any main line. The nearest railroad station was sixteen miles distant from section 13. Every one must recognize that the influence of the location of a store in a sparsely settled community with the patronage of less than a dozen families is extremely problematical. While we are not inclined to relieve those making such promises as inducements to purchasers of land, we think that caution should be exercised lest parties be mulcted in damages out of all proportion to what might reasonably have been anticipated by either as consequences of a breach. Three witnesses testified that the land was worth $4 or $5 per acre in 1903, and that in the opinion of one of them the value would have enhanced $3 and possibly $5 per acre by the erection of the store, while the other two fixed the increase at $4 per acre. On the other hand, two witnesses estimated the value of the land at from $8 to $10 per acre, and were of opinion that the erection of the building would not have increased its value. The question is not how much plaintiff by means of this agreement was able to inflate the price of the land, but how much the improvement, had it been made as agreed, would have increased its value. The jury said $4 per acre, and it is apparent that this is supported by the evidence.

11. DAMAGES: excessive verdict.

We discover no error, and the judgment is *affirmed*.