C. T. KIRKWOOD, Appellee, v. PERRY TOWN LOT & IMPROVEMENT COMPANY, Appellant.

PARTIES: Joinder—Failure to Join—How Question Raised. Defect
1  of parties is a question which must be raised by demurrer or answer.

**CONTRACTS:** Tender of Performance—When Tender Excused— Vendor and Purchaser. Performance, or tender of performance, of a contract by one seeking to recover damages for a breach thereof need not be shown when defendant is hopelessly in default.

**EVIDENCE:** Parol as Affecting Writing—Unity of Two Writings as One Contract. Parol evidence may be competent to show that two separate writings are, in reality, but one contract.

**EVIDENCE:** Weight and Sufficiency—Ordinary Fact Question. Whether *two* contracts were intended by the parties as *one* contract is a question of fact, the existence of which depends on a preponderance of evidence, not on evidence which is ''clear, satisfactory and convincing.''

**PLEADING:** Issue, Proof and Variance—Variance Between Copies Attached and Contract Offered. A written contract is not rendered inadmissible because of variances between said contract and the copy thereof set out in the pleadings, when that part of the contract bearing on the issues is correctly set forth in the pleadings.

**TRIAL:** Instructions—Form, Requisites and Sufficiency—Prejudicial Inference. An instruction ''that defendant *now* admits the execution of a contract,'' in no wise warrants the objection that therefrom the jury might infer that the defendant had theretofore been equivocating in regard to the execution of such contract.

**TRIAL:** Instructions—Province of Court—Assumption of Truth of Facts. The court, in its instructions in a civil case, may assume as true all matters admitted to be true or otherwise manifestly uncontested.

**DAMAGES:** Measure of Damages—Purchase of Land—Contract to Locate Car Line, Etc.—Breach. The measure of damages, for breach of a contract for the purchase of land, arising out of the defendant's failure, as per contract, to locate in the vicinity a street car line, a college and a steel mill, is the difference in value of the land with and without the location of such improvements.

**EVIDENCE:** Opinion Evidence—Value—One's Own Property. One may testify as to the value of his own property.

**EVIDENCE:** Relevancy, Materiality and Competency—Value—Purchase Price. Evidence as to the price paid for property at a time not unduly remote from the time in issue, is admissible on the question of value.

**PRINCIPAL AND AGENT:** The Relation—Evidence—Declarations of Agent. Proof of agency may not be proven by the mere declarations of the alleged agent, but it is not prejudicial error

to permit such declarations to remain in a record which conclusively showed by competent evidence that such alleged agent was agent in fact.

**TRIAL:** Conduct of Trial—View of Premises by Jury—Purpose—
12  **Instructions.** Instructions are correct which, in effect, tell the jury that the purpose in permitting them to view the premises is to enable them to better understand and apply the evidence actually introduced, and not to make the jurors silent witnesses, and that the verdict must not be based on *their* examination of the premises.

*Appeal from Perry Superior Court.*—W. W. CARDELL, Judge.

SATURDAY, OCTOBER 28, 1916.

ACTION to recover damages. The petition was in two counts, the first asking to recover for a breach of warranty, and the second count for fraud and false representations committed by defendant in inducing plaintiff to enter into the contract. There was a trial to a jury, and a verdict for plaintiff for $500, upon which judgment was entered, and the defendant appeals.—*Affirmed.*

*H. G. Giddings,* for appellant.

*W. H. Winegar,* for appellee.

PRESTON, J.—The first count of the petition alleged that in the contract of purchase was the following clause:

"It is further agreed that the seller will guarantee to the buyer that within two years from the date of this contract a street railway will be built and in operation from the main business portions of the city of Perry across the Dilenbeck Additions."

It alleged, also, that the street railway was not built, and that no attempt was made to construct the railway; that plaintiff relied upon the guaranty or warranty; that the contract was executed September 20, 1912, and that thereafter, on September 23, 1912, plaintiff and defendant modified their contract by defendant's agreeing to construct upon the lot pur-

chased a dwelling house, which contract is attached to the petition; that, at the time the second contract was entered into, plaintiff had not learned that defendant would not fulfill its guaranty, and he would not have entered into the second contract had he so known; that the second contract was not a cancellation of the original, but was in addition thereto, and, at the request of defendant, it was incorporated as shown in the second contract; and that, to induce plaintiff to sign the second contract, defendant stated that all provisions of the original contract would be binding in the second, and that the guarantee in the first in regard to the street railroad would be considered a part of the second; and that plaintiff would not have entered into the second contract but for such representations. In the second count, plaintiff set out substantially the same matters contained in the first count, and in addition thereto alleged that defendant, through its officers and agents, represented to plaintiff that a school and college would be constructed in one of the Dilenbeck Additions; and that the same would be in operation in a short time, and stated that lots had been sold for that purpose; and that the Shorthill Steel & Iron Works would be in operation within a short time; and that the same would employ continuously a large number of men; and that these men, with their families, would be brought to Perry, Iowa; and stated that arrangements had been made so that the iron works would be in operation within a short time; and that arrangements had been made for the construction of a large number of houses in the Dilenbeck Additions during the summer following the date of the contract; that plaintiff relied on the representations, etc. Plaintiff prayed for judgment in the total sum of $2,000 in damages sustained by him in the purchase of said lots on account of the conduct of defendant and on account of the breach of the written warranty.

The defendant answered, admitting that it was the owner of the real estate described in the petition at the time the contracts were entered into, and denied other averments of

the petition, except those admitted. For further answer, defendant alleged that, if any contract of the tenor and effect of the writing attached to the petition was ever entered into, the same was canceled, set aside and abrogated by the later contract of September 23d, and alleged that the last contract was made, executed and delivered as the whole contract and agreement between the parties with reference to the purchase of the real estate. Defendant further pleaded as a defense a default by plaintiff in payments upon the purchase price and the notice of forfeiture.

The court sustained plaintiff's motion to strike from defendant's answer the division thereof pleading the alleged forfeiture of said contract, as being immaterial, irrelevant and incompetent. The first contract was signed by the Town Lot Company and the plaintiffs; the second contract was also signed by plaintiff's wife and C. L. Rogers, plaintiff's father-in-law. Before the introduction of any evidence upon the trial, defendant objected to the introduction of any testimony in support of the petition or either count thereof, for the reason that it appeared on the face of the petition that the plaintiff had no cause of action in his own right against defendant, and for the reason that it appeared that he was not entitled, in his own name and in his own right, to maintain any suit upon the cause or causes of action attempted to be pleaded in the petition. The thought is, as we understand it, that there was a defect of parties, in that plaintiff's wife had not joined in the suit, and that she had signed the second contract. The same question was raised also by defendant's motion for a verdict, and in the motion for new trial.

Prior to September 20, 1912, defendant had laid out, as additions to the city of Perry, Iowa, a large tract of land on the east of said city, and had divided the same into several additions, known as Dilenbeck Additions to the city of Perry, Iowa. On the 18th, 19th and 20th days of September, 1912, defendant inaugurated and carried out a "Red Tag Sale" of the lots in the said additions. In preparation for the sale,

defendant had advertised in the papers in neighboring sections, erected tents upon the premises, and had staked out the lots in said additions and placed flags thereon, and on each stake there was the number of the lot and the price. Music by a band was furnished, and watermelons dispensed to prospective buyers. On September 18th, the first day of the sale, plaintiff came to Perry, on account of advertisements he had seen in the papers of a neighboring town, looked at the lots, talked to some of the agents of the defendant, returned home, and, on the 20th, the last day of the sale, came back to Perry with his wife, again visited the sale, and at this time purchased two vacant lots, paying $85 cash down, and the balance, $765, to be paid in monthly payments. After the purchase of the lots, plaintiff and the officers of defendant company had some conversation about defendant's building a residence for plaintiff upon the lots purchased, and three days after, the second contract, before referred to, was executed. At this time, defendant entered into a contract with the National Wood works to build a residence upon the lots. At the same time, the company deeded the lots to plaintiff, without any other consideration than that named in the first contract, and, as defendant contends, the second contract was a part of the consideration. During the short space of time that the title of the lots was in plaintiff, he gave a mortgage on the lots for $1,700, which plaintiff assumed and agreed to pay, and gave notes for the balance of the purchase price on the lots and house. After the mortgage was executed, plaintiff at once deeded the property back to the defendant company, and then executed the second contract of purchase, before referred to. The contract covered the lots and house. At the request of the defendant, plaintiff's wife signed this last agreement, simply as the wife of plaintiff. Plaintiff's father-in-law, Rogers, also signed the second contract, at plaintiff's request. Plaintiff's wife and Rogers disclaimed any interest in the contract. The purpose of Rogers and plaintiff's wife in signing the contract does not clearly appear. In this transaction

of conveyances and reconveyances, defendant. company omitted from the last contract of purchase the guarantee of the construction and operation of a street railway line. But there is evidence, and the jury could have so found, that defendant informed plaintiff that these contracts were all one, and that any guarantee made in any one of the contracts was a part of all of them, as it was really one transaction. The court submitted to the jury the question as to whether or not they were one transaction, and the jury must have found that they were. There was evidence to sustain such finding, and that defendant itself so construed the contracts. No street railway line was constructed, as provided in the contract, and the iron works and college and other things were not built, as it was represented they would be. The second contract provided that:

"The seller hereby agrees to sell to the buyer on performance of the agreement of the buyer as hereinafter mentioned," etc.

After the time for building the street railway line had expired, and after it was shown by the evidence that defendant could not have complied with the warranty contained in said contract, it served a notice of forfeiture upon the plaintiff, on account of nonpayment of the monthly installments. Appellant's argument consists of 110 pages, and there are 21 assignments of error. Some of these are not sufficiently specific, and others are not argued, and some are without merit. The more important ones will be noticed in the order, as nearly as may be, in which they are argued.

1. As stated, the defendant sought in various ways to raise the question of a defect of parties, in that plaintiff's wife was not made a plaintiff. Appellant relies on *Enix v.*

1. PARTIES:
joinder: failure
to join: how
question raised.

*Iowa Cent. R. Co.*, 114 Iowa 508. But that case was tried upon the theory that negligence had been alleged, and it was held that, no objection having been made to the sufficiency of the petition and as to its stating a cause of action, the question could

not be raised by exceptions to the instructions. The case does not meet the point as to a defect of parties.

We think the point is ruled by *Lenoch v. Yoss*, 157 Iowa 314. That case is somewhat similar in its facts, and it was said:

"It was probably not necessary to make the wife a party plaintiff, but, if she should have joined her husband as plaintiff, the defendants waived the matter by not demurring to the petition or raising the question by their answer," citing sections of the statute and other cases.

2. The next error assigned is that the court erred in striking that part of the answer in regard to the default of plaintiff in making monthly payments and that defendant had

2. CONTRACTS: tender of performance: when tender excused: vendor and purchaser.

served notice of forfeiture, and that the court erred in not permitting defendant to show default in performance of the contract of purchase by plaintiff. The same question was raised in the motion to direct a verdict and by an offered instruction. The argument is that the obligations of the defendant were contingent upon the prior performance of the contract by plaintiff, and that plaintiff could not recover on his contract until he had himself performed, unless performance had been waived or excused. It was alleged, in the count of the answer stricken, that plaintiff, at the time of the commencement of suit, was in default in respect to payments upon his contract, and that, on the 25th of September, 1914, a notice of forfeiture had been served upon the plaintiff by the defendant. As already stated, the railroad was not built within the two years from the date of the contract. At the time defendant served the notice of forfeiture upon plaintiff, the defendant was already in default, and had placed itself in a position where it could not comply with its contract. A performance or tender of performance by plaintiff under these circumstances would have been a useless act, because, as stated, the defendant was incapable of performing. The only object of performance on the part of the plaintiff, or plaintiff's offer

to perform, would be to compel defendant to perform his part of the contract. But defendant was unable to perform, and therefore tender of performance or a performance upon the part of the plaintiff would be a useless act, and was unnecessary. As sustaining this proposition, see *McWhirter v. Crawford,* 104 Iowa 550; 39 Cyc. 1371; *Martin v. Roberts,* 127 Iowa 218; *Kuhlman v. Wieben,* 129 Iowa 188; *Nelson v. Chingren,* 132 Iowa 383; *Webb v. Hancher,* 127 Iowa 269; 39 Cyc. 1400, 1401.

3. It is assigned as error that the court erred in permitting evidence bearing upon the question as to whether the two contracts were, in effect, one contract. There is nothing

3. EVIDENCE: parol as affecting writing: unity of two writings as one contract.

in the second contract to show that the first was superseded by the second, or whether the second was a substitute for the first. Plaintiff contends that the second contract was simply a modification of the other, and that the two should be construed as one contract. The circumstances under which the contracts, mortgage and deed were executed have been already set out, and we think the circumstances were such as that it was a fair question for the jury whether they should be considered together and as one contract. The defendant offered an instruction directing the jury to return a verdict for the defendant because the first was superseded, and there were two separate contracts. This was denied, and properly so. The court submitted the question to the jury under a proper instruction.

4. The court, in Instruction 7, instructed the jury in substance, that the burden of proof was upon plaintiff to establish by a preponderance of the evidence that, at the time

4. EVIDENCE: weight and sufficiency: ordinary fact question.

plaintiff entered into the second contract, he had not learned that defendant would not fulfill its guaranty concerning the building of a street railway, as guaranteed in the first contract; and that the second contract was not a cancellation of the original, but additional matter; and that, at the

request of defendant, it was incorporated in the second contract; and that, to induce plaintiff to sign the second contract, defendant stated that all the provisions of the original contract would be binding, etc. The objection is that a preponderance of the evidence is not sufficient, but that it is required that it be shown by evidence that is clear, satisfactory and convincing, and that the jury should have been so told.

Defendant cites *Merchants Nat. Bank v. Murphy,* 125 Iowa 607; *Bowman v. Besley,* 122 Iowa 42; *Schrimper v. Chicago, M. & St. P. R. Co.,* 115 Iowa 35; and other cases. But all these cases were where it was sought to reform a written instrument. Such is not the proposition here. It was simply a question as to whether, under all the circumstances, the two contracts should be construed together and considered as one contract. We think a preponderance of the evidence was sufficient to establish that fact.

5.   Defendant objected to the introduction in evidence of the first contract, on the ground that there was a variance between the contract offered in evidence and the copy of it attached to the petition, and made this one of the grounds of its motion for a directed verdict; also offered an instruction on the subject. The objection, as stated in the motion for a directed verdict, is that there is no competent, relevant or legal evidence in the record of the execution and delivery to the plaintiff of any contract, as alleged in the petition, in which the defendant contracted or guaranteed the construction of a street railway, as alleged in said count. The thought is that there is a variance between the copy attached to the petition and the document introduced in evidence. We have compared the two, and, so far as they relate to any issue in this case, and particularly as to that part guaranteeing the construction of a street railway, there is no variance. In some places in the contract, the numbers of

*5. PLEADING : issue, proof and variance : variance between copies attached and contract offered.*

the lot are spelled out, with figures in parenthesis; while, in the copy, simply the figures are given, and in the date, the letters "A. D." are omitted in the copy attached to the petition. Some of the paragraphs in the contract are omitted in the copy attached to the petition, but those omitted have no bearing upon any question arising in this case. As to these omitted paragraphs, the numbers were given, and there were other indications of omission. The defendant had a duplicate copy of the contract sued on, and its provisions were known to it, and it could not have been surprised or in any way prejudiced by the omissions. The objection is without merit.

6. Neither is there any merit in the next paragraph, which is that the court erred in instructing the jury that defendant admitted the execution of the first contract, when

**6. TRIAL: instructions: form, requisites and sufficiency: prejudicial inference.** the execution thereof was denied by defendant in its answer, and in instructing the jury that defendant now admits the execution of the second contract, such execution being admitted in the answer. The argument is that by the court's stating that it is now admitted, the jury would be led to believe that defendant had at some time equivocated in reference thereto. The evidence shows that the

**7. TRIAL: instructions: province of court: assumption of truth of facts.** president of the company, as a witness, admitted the execution of both contracts. If the execution of the contracts, or either of them, was denied in the answer, and an officer of the company who was present and executed the contract admitted, on the stand as a witness, the execution, we see no prejudice to the defendant, and no objection to the court's stating that the execution is now admitted.

It is thought by defendant that the court refused to construe the contracts. But an examination of the record shows that the court did, in the instructions, state to the jury the legal effect of a warranty and guaranty made by the defendant, and construed the contract of warranty, and told the

jury what the contracts meant, and what obligations said contract placed upon the defendant, and the rights of plaintiff thereunder. We do not understand appellant to complain of the instructions given, but it objected to the refusal of the court to give the one asked by it. There was sufficient evidence to go to the jury on the question as to the false representations, and the court did not err in submitting such questions to the jury.

7. As to the measure of damages, defendant requested an instruction to the effect that the contract was so indefinite and uncertain in its provisions as to afford no basis for the assessment of more than nominal damages for a violation thereof. The contract in regard to the street car line's running through the additions did not specify the streets upon which the line was to run, and the argument for appellant is that the defendant might have complied with the warranty by procuring a car line ranging from the street upon which plaintiff's property was situated to a street a half mile away, and that a street car line a half mile from one's residence would not add to the value of the property in any amount capable of estimation. There was evidence that it was pointed out where the line would run. The place so pointed out did run through these additions, so that it did not vary the contract. We do not find any evidence in the record, and appellant has not in argument pointed out any, that the damages would be merely nominal in case the railroad did not go nearer than a half mile from plaintiff's property. The reference given in argument to the abstract on this point is where one of plaintiff's witnesses testified on cross-examination as follows:

8. DAMAGES: measure of damages: purchase of land: contract to locate car line, etc.: breach.

"In fixing the damage upon the failure to build the car line, it is a fact, I guess, that I fixed it on the theory that the car line would either pass this property or would be within a block or two of it at most, whereas it might have been constructed from the main business portion of Perry across the

Dilenbeck Additions, and been at least a half mile from his property at the nearest point.''

The measure of damages as laid down by the trial court was the difference in value of the property as it was, without the street railway line, college and steel plant, and what it would have been if these improvements had been built. The evidence was introduced separately upon the amount of damages without the street railway line constructed, and the amount of damages with the street railway line, the college and the steel plant in operation, as represented. This was the correct rule as to the measure of damages. *Warfield v. Clark,* 118 Iowa 69, 70; *Stoke v. Converse,* 153 Iowa 274; *Iowa-Minnesota Land Co. v. Conner,* 136 Iowa 674; *Long v. Davis,* 136 Iowa 734.

9. EVIDENCE: opinion evidence: value: one's own property.

The court did not err in permitting plaintiff to testify as to the value of his own property. *City Nat. Bank v. Jordan,* 139 Iowa 499, 504; *Thomason v. Capital Ins. Co.,* 92 Iowa 72; *Tubbs v. Mechanics' Ins. Co.,* 131 Iowa 217.

10. EVIDENCE: relevancy, materiality and competency: value: purchase price.

Evidence of the price paid for property is admissible on the question of value. *Thompson v. Anderson,* 94 Iowa 554; *Ranck v. City of Cedar Rapids,* 134 Iowa 563.

Perhaps the evidence ought not to be too remote as to the time of purchase. It was not so in this case. It was proper to take into consideration that the lots were to be improved. It was known to the officers of the defendant company that plaintiff desired to purchase the lots for a residence. Under such circumstances, the plaintiff's damages were more than the mere difference in the value of the naked lot. *White v. Smith,* 54 Iowa 233.

The evidence of the witness Hall was competent as to the value of plaintiff's property if the steel plant had employed a certain number of men. Such was a part of the representation in regard to the steel plant.

8. It is next contended that there was not sufficient evi-

dence to go to the jury on the question as to the alleged false representations in regard to the school or college and the steel plant. It would unduly prolong the opinion to review the evidence on this point. Having examined the evidence on this point, we are satisfied that the evidence was amply sufficient to take the case to the jury on these issues.

9. Appellant's next contention is that the court erred in overruling defendant's motion to strike the testimony of plaintiff's wife that witness Crenshaw stated that he was a salesman for defendant company, for the reason, as defendant contends, that the evidence is hearsay and not binding on the defendant. The argument is that proof of agency may not be made by the mere declaration of the alleged agent. Even if appellant's proposition be conceded, there was an abundance of evidence in the record, from other witnesses and from transactions with plaintiff and the president and assistant secretary of the defendant company in regard to the sale of these lots, to show that Crenshaw was acting as the agent for the defendant in selling the lots at the sale.

*11. PRINCIPAL AND AGENT: the relation: evidence: declarations of agent.*

10. It appears that the jury was permitted to view the premises, and the court instructed the jury, in substance, that the purpose of this view was to enable the jury to better understand the testimony of the witnesses respecting the same, and to more intelligently apply such testimony to the issues before them, but not to make them silent witnesses in the case, and that the verdict must not be based upon their examination of the premises. This is in accordance with the law. *Moore v. Chicago, St. P. & K. C. R. Co.,* 93 Iowa 484.

*12. TRIAL: conduct of trial: view of premises by jury: purpose: instructions.*

Other minor matters are discussed to some extent, but those we have noticed are controlling. It is our conclusion that there was no prejudicial error, and the judgment is, therefore—*Affirmed.*

EVANS, C. J., DEEMER AND WEAVER, JJ., concur.