TAYLOR ENTERPRISE, INC., Lyle K. Taylor, Georgia M. Taylor, William Taylor, and Debra Jo Taylor, Appellants,

v.

CLARINDA PRODUCTION CREDIT ASSOCIATION and Federal Intermediate Credit Bank of Omaha, Appellees.

No. 87–1794.

Supreme Court of Iowa.

Oct. 18, 1989.

Robert F. Leonard and Jon Johnson of Leonard, Johnson & Graeser, P.C., Sidney, and Emil Trott, Jr. of Barrett & Trott, Des Moines, for appellants.

Jerrold L. Strasheim, Timothy V. Haight, and Carol C. Knoepfler of Baird, Holm, McEachen, Pedersen, Hamann & Strasheim, Omaha, Neb., for appellees.

Considered by McGIVERIN, C.J., and HARRIS, SCHULTZ, NEUMAN and SNELL, JJ.

SCHULTZ, Justice.

In this action plaintiffs, borrowers, sued for damages from their lender and an association alleged to have provided supervision and direction to the lender. Plaintiffs sought recovery on theories that the lender breached a written loan commitment, interfered with the borrowers' contractual relationship with another lender, and breached a fiduciary duty owed plaintiff. The matter proceeded to trial, and a jury returned a special verdict, finding in favor of defendants on each of plaintiffs' claims. On appeal plaintiffs challenged the trial court's rulings and instructions on its contract and tortious interference actions. The court of appeals reversed the trial court, holding that it erred in refusing to instruct the jury that a contract existed and had been breached. We vacate the decision of the court of appeals and affirm the trial court.

Individual plaintiffs are Lyle K. Taylor, his wife Georgia M. Taylor, their son William Taylor and his wife Debra Jo Taylor. The remaining plaintiff, Taylor Enterprise, Inc., is a corporation in which Lyle and Georgia Taylor are the majority stockholders. We refer to plaintiffs collectively as the Taylors. The two corporate defendants are the Clarinda Production Credit Association (PCA), an agricultural lender, and the Federal Intermediate Credit Bank of Omaha (FICB), PCA's supervising agency. Taylors were the owners of approximately 6,000 acres of farm real estate and twenty-four rental homes. For several years before 1981, PCA had provided operating funds to Taylors for their farming operation and to finance the acquisition of farm real estate. Since 1979, Taylors had problems with profitability and cash flow. Their farm business changed from a farming operation to farm rental. As this was a period of high interest, PCA and Taylors agreed that there was a need to sell part of the land as a solution to the problems of profitability and cash flow.

In 1983, as a means to conduct an orderly liquidation of their real estate, Taylors, with PCA's approval, sought long-term loans from other lending institutions. Taylors obtained a five-year loan commitment in the amount of $2,000,000 from a Missouri bank, Citizens State Bank (Citizens). On September 9, 1983, several loan documents relating to the refinancing transaction were signed by Taylors and PCA, including a loan agreement upon which plaintiffs relied in their action against PCA. This written agreement required Taylors to apply the proceeds from the $2,000,000 loan from Citizens to its $2,787,154 debt with PCA. In return, PCA agreed to release its claim to a first mortgage on 3,607 acres of real estate to Citizens. PCA retained, however, its second mortgage on the real estate and its security agreements on Taylors' personal property. Further, PCA agreed to advance the interest and principal payments of $40,000 annually for five years payable to Citizens. In addition to the loan agreement, Taylors renewed their financing with PCA, signed a credit note, a budget note, a security agreement, mortgages and a real estate letter agreement, stating that Lyle K. Taylor recognized "that real estate needs to be sold to cover losses in the projected cash flow."

In March 1985, PCA failed to advance Taylors the money for the semi-annual interest payments on Citizens' loan. As Taylors were unable to make their payments to Citizens, it foreclosed the real estate mortgage. PCA was a party to that foreclosure action. In that action Citizens' mortgage and PCA's second mortgage were foreclosed, despite Taylors' defense that PCA failed to honor its loan agreement and advance funds so that they could pay their obligation to Citizens. The holding of the district court on the foreclosure action was

appealed and affirmed in an unpublished opinion by the court of appeals.

In the meantime, Taylors brought this action against PCA and FICB. In defending their decision not to advance Taylors the money necessary to repay Citizens, PCA cited Taylors' failure to honor their commitment to sell real estate and to pay on their loans. At trial they presented evidence of plaintiffs' substantial future tradings and losses, diverted collateral, rent payments to a family-owned corporation as well as loan payments to that corporation and several grandchildren, transfers of property and other cash drains for items purchased for personal pleasure. The parties disputed whether the loan agreement was an unconditional obligation to lend Taylors money to make their payments to Citizens or whether the payment was conditioned on the fulfillment of certain obligations by Taylors. The jury found in favor of PCA and FICB. Plaintiffs appealed.

I. *Contract Action.* Plaintiffs maintain that the evidence conclusively established as a matter of law the existence of a written contract in which PCA promised to loan funds to plaintiffs to make principal and interest payments on their note and mortgage to Citizens. In the alternative, they urge that the court erred in instructing the jury on defendants' affirmative defenses. Defendants take the position that there were factual issues concerning the terms of the contract and the defenses to its breach. The basic difference in the parties' approaches is that plaintiffs urge that the only contract in issue is the loan agreement, while defendants maintain that the terms of the contract include all of the instruments and agreements entered into by the parties to accomplish plaintiffs' refinancing.

The court of appeals adopted plaintiffs' approach, holding that the trial court had erred in finding that there were factual disputes concerning the existence of the loan agreement and in failing to instruct the jury that a contract existed and had been breached. It did not address defendants' contention that the contract must be determined from the entire transaction.

A. *Directed Verdict.* Plaintiffs allege that the trial court erred in not directing a verdict in their favor in their breach of contract action. Principles of contract construction and interpretation dictate whether issues concerning contracts are decided as a matter of law by the court or are factual issues to be determined by the jury. "Construction" of a contract is the process of determining its legal effect and is always a matter of law to be resolved by the court. *Connie's Constr. Co. v. Fireman's Fund Ins. Co.*, 227 N.W.2d 207, 210 (Iowa 1975). Interpretation, which involves ascertaining the meaning of contractual words, is reviewed as a legal issue, unless it depended at the trial level on extrinsic evidence. *Id.* Extrinsic evidence is admissible as an aid to interpretation when it "throws light on the situation of the parties, antecedent negotiations, the attendant circumstances and the objectives the parties were striving to attain...." *Hamilton v. Wosepka*, 261 Iowa 299, 306, 154 N.W.2d 164, 168 (1967). Extrinsic evidence is also permitted when the claim is made that two contracts are, in reality, one contract. *Kirkwood v. Perry Town Lot & Improvement Co.*, 178 Iowa 248, 256, 159 N.W. 774, 777 (1916). Defendants have made such a claim here.

The evidence is clear that for some time prior to September 9, 1983, plaintiffs were having serious cash flow and profitability problems. Plaintiffs needed to sell some of their farm land to correct this situation, but needed time to do so for both tax and practical reasons. They obtained financing on the real estate for a five-year period from Citizens. As a result, on the date in question, six additional loan agreements were executed. Instruments relating to the same transaction which are contemporaneously executed should be construed together. *Allison Ford Sales v. Farmers State Bank*, 249 Iowa 261, 264, 86 N.W.2d 896, 898 (1957); *Interstate Finance Corp. v. Brink*, 232 Iowa 733, 736, 6 N.W.2d 120, 121–22 (1942). It is a question of fact for the jury to determine, from the writing and the testimony, whether the parties intended that the agreements be con-

sidered together as one contract. *Kirkwood*, 178 Iowa at 256, 159 N.W. at 777.

■ If the various documents are construed together as one contract, rather than as independent instruments, plaintiffs' own defaults come into play. The court of appeals, however, interpreted the loan agreement in isolation. It is true that there is no provision in the various instruments which excuses defendants' performance of their promises to make a loan should plaintiffs default on their notes. There may be an implied contract, however, on a point not covered by the expressed contracts. *LaFontaine v. Developers & Builders, Inc.*, 261 Iowa 1177, 1183, 156 N.W.2d 651, 656 (1968); *see* Restatement (Second) of Contracts § 204 (1981). We believe that a fact question was engendered as to whether the parties intended the loan commitment to be carried out in the event that plaintiffs breached their written agreements to repay PCA on its note. *See Des Moines Blue Ribbon Dist., Inc. v. Drewrys Ltd., U.S.A. Inc.*, 256 Iowa 899, 904, 129 N.W.2d 731, 735 (1964); *Kirkwood*, 178 Iowa at 256, 159 N.W. at 777. We believe that reasonable minds could have differed as to the intent of the parties. Consequently, there are questions of fact for the jury to decide.

■ Likewise, we believe that the question of whether the parties performed or failed to perform their respective obligations was for the jury. A material condition which is agreed to by the parties must be fulfilled by the party bringing suit in order for such party to recover on the contract. *In re Estate of Fetterman*, 207 Iowa 252, 263–64, 222 N.W. 872, 877–78 (1929). Generally, questions of performance or breach are for the jury. *Ryko Mfg. Co. v. Eden Serv.*, 823 F.2d 1215, 1238 (8th Cir.1987), *cert. denied*, 484 U.S. 1026, 108 S.Ct. 751, 98 L.Ed.2d 763 (1988); *Drewrys*, 256 Iowa at 908, 129 N.W.2d at 737. In summary, we hold that a jury issue was engendered as to the terms of the contract between the parties and issues concerning any breaches by either party. The trial court did not err in overruling plaintiffs' motion for a directed verdict in its favor.

B. *Affirmative Defense of Discharge.* Plaintiffs allege that the trial court erred in submitting the affirmative defense of discharge to the jury. They claim that (1) the defense had no application to the facts of the case, and (2) the trial court did not accurately state the law. Defendants maintain that plaintiffs did not preserve error by their objections to the instructions. They further maintain that any error would only be harmless error because of the special verdict. The court of appeals did not address this issue.

■ The objection that the court did not accurately state the law is not sufficiently definite to preserve error; the objection must point out the error, so that the trial court may correct it. *Briney v. Tri–State Mut. Grain Dealers Fire Ins. Co.*, 254 Iowa 673, 689, 117 N.W.2d 889, 898 (1963).

■ We also find no reversible error in the trial court's denial of that portion of the objection which asserts that discharge is not an affirmative defense applicable to the facts of this case. Substantial evidence existed for the jury to determine whether plaintiffs could repay any of the money loaned to them. Plaintiffs' one note was past due and remained unpaid; the other note was not reduced to $5 as had been agreed. Taylors were making no effort to perform their admitted commitment to sell real estate in order to pay their obligation. Large portions of the proceeds from the sale of collateral were diverted, loan payments were made to relatives and a family-owned corporation, rent payments were made to that corporation, and Taylors engaged in commodity tradings and speculation which resulted in huge losses.

We have stated that in order to predicate the discharge of a contracting party upon the breach of conditions by the other, the party claiming discharge must show that the condition breached constituted the entire agreed exchange by the other party or was expressly recognized in a bargain as a condition for the other's performance. *Union Story Trust & Savings Bank v. Sayer*, 332 N.W.2d 316, 322 (Iowa 1983). The claimed breach in *Sayer* was a failure of

the bank to monitor its loan funds and did not go to the entire agreement between the parties. Here, defendants maintain that there was a discharge by failure of consideration. The evidence in the record indicates that plaintiffs had placed themselves in a position where they could not fully repay their past due obligations nor would they be able to pay any further advances on the loan agreement. Under such circumstances we believe that the affirmative defense of discharge is appropriate. 6 A. Corbin, *Corbin on Contracts* § 1255, at 21–22 (1962).

We have indicated that an alleged failure of consideration must ordinarily be total in order to be a complete defense to the return performance of the other contracting party. *Sayer*, 332 N.W.2d at 322. We believe there is a fact question as to the applicability of this defense. There was evidence of several mutual promises. A reasonable pairing-off of equivalent obligations could include defendants' promise to make an installment loan and plaintiffs' promise to pay its obligation on the advances. *See* Restatement (Second) of Contracts § 240 (1981). Plaintiffs' failure to repay the previous installment loan and their apparent lack of ability to repay the present loan installments, because of their willful dissipation of collateral and assets or present financial condition, would discharge defendants' obligation to loan the money. *See* Restatement (Second) of Contracts §§ 225(2), 237 (1981). Even though plaintiffs had not breached their promise to repay the latest installment payment nor indicated they would not repay, PCA as a promisor may be discharged by a prospective failure of consideration. *Corbin* § 1255, at 22.

A discharge through failure of consideration extends to the situation "where the party merely gets into such a position, financial or otherwise, that a reasonable man in a promisor's place would be justified in believing that the equivalent is not going to be rendered." *Id.* Stated otherwise, PCA could be discharged from its obligation to advance the installment loan payment, if the factfinder determined that plaintiffs either had no intention to perform on their promise to repay or were in such a position, financial or otherwise, that PCA could reasonably believe that it would not be paid.

Under the record, the issue of discharge as an affirmative defense was properly submitted to the jury. No objections were made as to the form of the instruction. Thus, we find no error in the instruction as given.

C. *Affirmative Defense of Excuse.* The trial court instructed the jury on the defense of excuse. Plaintiffs' general objection was that the evidence failed to sustain an instruction on their uncured failure to perform and that the instruction was not a correct statement of the law. As we indicated previously, an objection simply stating that the instruction is not a correct statement of law is not sufficiently precise to preserve error. We address the remaining claim that there is insufficient evidence to give the instruction.

■ The court instructed the jury that defendants may be excused from lending funds under the written loan agreement if, at the time for such performance, there was an uncured failure by the Taylors to perform. The issue before us is whether there are sufficient facts in the record to submit this affirmative defense to the jury. Plaintiffs admitted that they had stopped performing their side of the agreement long before it came time for PCA to make the installment loan in question. The record was replete with evidence of the sale of collateral without payment to PCA, the failure to list real estate promptly and the questionable payments to family members or corporations owned by family members. There was sufficient evidence to submit the instruction.

II. *Interference with Plaintiffs' Contractual Relationship with Others.* Plaintiffs, in their action for tortious inference with a business relationship, alleged that defendants intentionally interfered with the contractual relationship between plaintiffs and Citizens. The jury returned a special verdict, finding that there was no interference with the contractual relationship. On appeal, plaintiffs challenge the trial court's

instruction to the jury on the affirmative defense of justification and the instruction concerning when interference with a contract may be proper or privileged. The court of appeals did not address these contentions and no request was made for further review. Our review of the issues concerning these instructions indicate no error. For these reasons, we affirm the trial court's judgment in favor of defendants.

III. *Summary.* In summary, we hold that the judgment of the trial court should be affirmed and the decision of the court of appeals vacated. We have considered all of the issues and arguments raised by the parties. Because of our holding in favor of defendants, we do not reach questions of whether the doctrine of issue preclusion barred plaintiffs from relitigating an issue decided by the court of appeals in a prior judgment and whether the court, the second time around, was bound by that judgment. We have only addressed those questions we believed necessary to decide the issues before us on further review.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.