CARTER ET AL. V. SHERMAN, GOVERNOR, ETC.

1. **Permanent School Fund:** LOANING AND COLLECTION OF: CONFLICT OF COUNTY AND STATE AUTHORITIES. Where the state, by virtue of a special act of the legislature, loaned to the medical department of the University at Keokuk a portion of the permanent school fund, and took a mortgage on real estate to secure the same, which, by an action brought in the name of the state by the attorney-general, pursuant to a joint resolution of the Thirteenth General Assembly, was foreclosed, and the land bid in, upon sale thereunder, by the state: *held* that the board of supervisors of the county where the land lies had no authority to dispose of the land under the authority conferred by section 1850 of the Code; that that section applies only to lands purchased upon such mortgages as the county authorities are authorized to take under the provisions of chap. 12, title 12, of the Code; and that the governor was under no obligation to issue a patent to the plaintiffs, who purchased such lands at a sale made by the county authorities, but not authorized by the executive council.

2. **Appeal to Supreme Court:** TIME OF TAKING: WHEN IT BEGINS TO RUN. Where it was agreed that a cause should be taken under advisement, and decided in vacation, as of the September term, 1882, which adjourned on the 13th of that month, but the decision was not in fact announced until December 19, following; *held* that the time for taking an appeal began to run from the latter date.

*Appeal from Lee District Court.*

MONDAY, OCTOBER 2, 1883.

THE plaintiffs allege that certain lots in the petition described were ordered sold by the board of supervisors of Lee county, and, after being duly appraised by the township trustees, were, on the 25th day of June, 1877, at the court house door in Keokuk, by the county auditor offered for sale, and purchased by the plaintiffs for $1,300, and that the defendant, as governor of the state, refuses to issue a patent therefor. The plaintiffs pray for a writ of *mandamus* compelling the issuance of a patent. The court found in favor of the plaintiffs. The defendant appeals. The facts are stated in the opinion.

*Smith McPherson, Attorney-general,* for appellant.

*W. B. Collins*, for appellee.

DAY, CH. J.—The cause was submitted to the court below upon an agreed statement of facts, as follows:

"*First.* That under and pursuant to chapter 60 of the Laws of 1858, of the state of Iowa, being an act entitled, 'An act authorizing a loan from the school fund to the college of physicians and surgeons, known as the Medical Department of the University of the state of Iowa,' approved March 15, 1858, which act is made a part hereof, the state of Iowa loaned, on the —— day of May, 1858, and of the school fund of the state, to said college, the sum of $5,000, taking real estate and personal security therefor, as per a note and mortgage, copies of which are annexed hereto and made a part hereof, marked 'A' and 'B,' and the introduction of the original thereof is hereby waived. That said money and no part thereof has at any time been paid back to the state of Iowa.

"*Second.* That on or about the 31st day of August, 1870, the district court of Lee county, Iowa, in a suit by the state of Iowa against the said mortgagor and promissors upon said note, rendered judgment in favor of the state on said note for the full amount due thereon, being about the sum of $33,000, and a decree of foreclosure of said mortgage, which said judgment and decree are made a part hereof, and that same, or certified copies thereof by the clerk of said court, are hereby introduced in evidence.

"*Third.* That said judgment and no part thereof being paid, the same was sold by the sheriff of said county on execution under said judgment, on the —— day of June, 1871, as per the sheriff's deed, recorded in book 36, pages 4, 5 and 6, of town lots records of Lee county, Iowa, which record may be introduced as evidence, and made a part hereof, the original deed being waived; and the county recorder may make out and file herein a copy of said records, and, when so done, to have the same force and effect as any records in the case,

and any further certificate or bill of exceptions thereto is waived.

"*Fourth.* That, when the alleged sale as mentioned in the petition herein was made to plaintiffs, the same was done without the knowledge or consent of the state board or executive council of the state of Iowa, or any other state officer, and the said sale at no time has been approved by them or any of them. That after the said alleged sale the said plaintiff herein paid to the Auditor of Lee county the full purchase price of $1,300, and the said auditor of Lee county remitted the same to the treasurer of state on or about the ——— day of ———, 18—, but did not report the same on account of any particular property or sale, but simply 'on account of sale of school lands,' and the treasurer of state so reported to the state auditor as reported to him, and the auditor of state so entered the same on his books.

"*Fifth.* Defendant claims that the county auditor and board of supervisors of Lee county at no time charged themselves, or said county, with said property, or any part thereof. Plaintiff claims that they did. This question is to be decided by a certified copy of any county records and entries in official books of said Lee county, certified to by the auditor of Lee county, which certificate is to be regarded as evidence, the same as though testified to by said auditor and said books and records produced.

"*Sixth.* The $1,300 before referred to, the state of Iowa brings into open court and tenders back to plaintiffs. And, if defendant herein is successful, before final judgment is entered, said money shall be deposited with the clerk of this court for the use and benefit of plaintiffs,—it now being withdrawn, by consent of parties,without prejudice to defendant's tender. And this agreement, and all matters herein referred to, are made of record, and a bill of exceptions is waived, but all the foregoing are to be considered as being of record without said bill, as well as those matters hereinafter referred to. And it is further agreed, as evidence in this cause, that the board of

supervisors of Lee county, Iowa, ordered the sale of the property mentioned in the petition, and that the same was duly appraised at ($1,200) twelve hundred dollars, and due notice was given, and the said real estate was sold at public auction by J. C. Blackburn, auditor of Lee county, Iowa, on the 20th day of June, A. D. 1877, at the front door of the court house, Keokuk, Lee county, Iowa, at two o'clock, P. M., being the time and place set forth in said notice of sale, and then and there the plaintiffs, S. C. and S. Carter, bid off and purchased the said real estate for ($1,300) thirteen hundred dollars, and took immediate possession of the said real estate and made improvements thereon, and have continued and are now in possession of the same, and have paid the purchase money and received a certificate thereof from the auditor of the county of Lee, and state of Iowa, as appears from copy attached to the petition and made a part hereof. That said certificate of payment was duly sent to the state land office, and a deed or patent to said real estate demanded of the defendant, governor of the state of Iowa, and he refused to make the same." Pursuant to the foregoing statement, the auditor of Lee county filed his certificate as follows:

"I, C. M. Primeau, auditor of Lee county, Iowa, hereby certify that I have examined the records of the board of supervisors of Lee county, Iowa, and do not find where the county is charged with the money loaned to the college of physicians and surgeons of the medical department of the state of Iowa, at Keokuk, and I, as auditor of Lee county, Iowa, received from S. C. and S. Carter the sum of $1,300, proceeds from the sale of lots 1, 2, 5, 6, 7, 8, 9, 10, 11, 12, in block 20, Keokuk, Iowa, and remitted the same to the auditor of state of Iowa, by his direction, and the receipt from the treasurer of the state of Iowa for the amount is now on file in the office of the county treasurer of Lee county, Iowa, at Fort Madison."

I. The perpetual school fund of the state consists of five per cent upon the net proceeds of the sale of lands, the pro-

Carter et al. v. Sherman, Governor, etc.

1. PERMA-
NENT school
fund: loaning
and collection
of: conflict of
county and
state authori-
ties.

ceeds of the five hundred thousand acre grant, the proceeds of the sales of escheated estates, and of the sales of the sixteenth section. Code, § 1837. The five per centum on the proceeds of sales are apportioned among the several counties, and the funds arising from the other sources are payable to the county treasurer of the county in which the lands or escheated estates are. Code, § § 1839 and 1840. The county auditor is authorized to loan these funds. Code, § 1864.

The securities received for the loans are under the management of the board of supervisors. Code, § 1860. In case of the sale of lands on execution founded on any mortgage or contract, the attorney of the board is authorized to bid, on behalf of the state or county, such sum as the interests of the fund may require. Code, § 1874. Sections 1845 and 1846 of the Code authorize the board of supervisors to sell the sixteenth section, or lands selected in lieu thereof, or any part of the five hundred thousand acre grant.

Section 1850 of the Code provides that: "When any lands have been bid in by the state in behalf of the school fund, on execution founded on a judgment in favor of said fund, such land shall be sold in the same manner as other school lands."

The appellee claims that Lee county has the right to dispose of the lots in question, and bases that right upon the provision of section 1850 of the Code. We think, however, that this section applies to lands purchased upon judgments recovered upon mortgages or contracts referred to in section 1874 of the Code, being such mortgages or contracts as the county authorities are authorized to take under the provisions of chapter 12, title 12, of the Code. The fund in question was not loaned by the county authorities under the general provisions of the statute, but was loaned under the special provisions of chapter 60, laws of 1858. The claim was not prosecuted by the board of supervisors of Lee county, under the general statutes, but by the attorney-general of the

state, pursuant to joint resolution 13 of the Thirteenth General Assembly. See Laws of 1870, page 251. The amount of the loan never was apportioned to Lee county, and it does not appear that that county ever had anything to do, either with making the loan or enforcing it. Under sections 1910 and 1911 of the Code, the attorney-general was authorized to bid in the lots for the state, and, under section 1916 of the Code, the care, custody, management and sale thereof are entrusted to the executive council. The county of Lee was not authorized to make any disposition of the lands, and the defendant properly refused to execute a patent to the purchaser.

II.   The appellees submitted with the case a motion to dismiss the appeal, upon the ground that it was not taken in time. The notice of appeal was served on the 2. APPEAL to supreme court: time of taking: when it begins to run. 27th day of April, 1883. The transcript shows that it was agreed that the cause should be taken under advisement, and decided in vacation, as of the September term, 1882, which adjourned on the 30th day of September. The decision was not, in fact, announced until December 19th, 1882. The period for taking an appeal runs from the time the decision is in fact made, and not from the time to which it has relation by agreement. This has frequently been ruled by this court in unreported decisions upon motions to dismiss appeals. The motion to dismiss is overruled.

The judgment of the court below is

REVERSED.