CHARLOTTE SHARPLESS STUTSMAN and JEAN ELIZABETH STUTSMAN, Proponents, Appellants, v. PRICILLA F. SHARPLESS, Contestant.

**Second appeal.** A second appeal to the Supreme Court may be taken, if perfected within the time fixed by statute.

**Time for taking an appeal.** The time within which an appeal may be taken begins to run from the actual record of the judgment, regardless of its announcement by the court, either orally or in writing.

**Wills:** CONTEST: APPEAL. Failure to appeal from an order admitting a former will to probate, the execution of which was in no sense an issue in the contest of a second will, did not affect the right of appeal from a judgment declaring the second will invalid.

**Same.** The fact that the guardian of minor proponents, after an adverse judgment in a will contest, presented his claim for services in the contest which was allowed by the executors of another will subsequently admitted to probate, did not estop the wards from appealing from the judgment denying probate of the will in contest.

**Insanity:** NONEXPERT OPINION. A nonexpert opinion of the sanity of a testator may be given by witnesses who are shown to have had an adequate opportunity to observe deceased's capacity, and have indicated some facts tending to support the opinion to be expressed.

| | |
|---|---|
| 125 | 335 |
| 125 | 749 |
| 125 | 335 |
| f130 | 151 |
| f130 | 186 |
| 125 | 335 |
| 131 | 6 |
| 125 | 335 |
| f132 | 103 |
| f132 | 719 |
| 133 | 705 |
| 125 | 335 |
| f134 | 310 |
| 125 | 335 |
| .135 | 176 |
| 135 | 336 |
| 125 | 335 |
| 136 | 560 |
| 136 | 563 |
| 125 | 335 |
| 142 | 38 |
| 125 | 335 |
| 143 | 82 |
| 143 | 498 |

**Examination of witness.** In a will contest, the cross-examination of a witness as to conversations with deceased concerning the making of the will, tending to impugn the motives of the witness, over objection that the subject was not inquired about on the direct examination, is held prejudicial error.

**Evidence:** FINANCIAL CONDITION OF BENEFICIARIES. Where a will is assailed as unreasonable and unjust, evidence of the financial condition of those having claims upon the testator's bounty is admissible, but this does not include a mere expectancy not likely to have been known or contemplated by the testator.

**Instructions:** EXPERT TESTIMONY. Unless the facts hypothetically stated to a medical expert are supported by the evidence, the opinion of the witness should be rejected, and an instruction permitting the jury to determine what facts were material in securing the opinion and to what extent a variance in the facts would have changed his opinion, was error.

*Appeal from Johnson District Court.*— HON. M. J. WADE, Judge.

MONDAY, OCTOBER 24, 1904.

THE jury found that deceased was of unsound mind when he executed a paper purporting to be his last will. From judgment thereon, proponents appeal.— *Reversed.*

*Dutcher & Davis,* for appellants.

*Remley & Ney,* for appellee.

LADD, J.— Samuel Sharpless was born in 1822, and married the contestant, then a widow, in 1857. Shortly afterwards his mother came to live with them, bringing with her a grandchild two years old; the daughter of deceased's only sister. This child continued in the family, after the grandmother's death, until 1891, when she was married, and to her was born Charlotte Sharpless Stutsman, May 12, 1897, and Jean Elizabeth Stutsman, May 20, 1900. Samuel died June 5, 1901. Two wills were filed for probate, one, executed in 1868, leaving all his property to his widow, and

the other, executed in 1901, giving her the use of it for life, with the remainder to the children of Mrs. Stutsman, save a legacy to a supposed namesake. The widow objected to probating the last will, on the ground of the alleged incapacity of the testator. Charles M. Dutcher was appointed guardian *ad litem* for the children, and a trial was had which resulted in a verdict for the contestant December 6, 1901. A motion for new trial was filed and then withdrawn. On the 10th day of the same month the court entered an order admitting the will of 1868 to probate, and appointed executors thereunder. The proponents perfected an appeal December 12, 1901, but this was dismissed by this court on the ground that no judgment had been entered on the verdict. On December 31, 1902, appellants requested the district court to enter judgment as of December 10, 1901, rejecting the will of 1901, in order to enable them to appeal, and this motion was sustained, notwithstanding objections interposed by contestant. The proponents again perfected an appeal June 5, 1903.

I. Appellee moves to dismiss the last appeal on the grounds that a second appeal cannot be taken in the same case, and that, as the guardian *ad litem* of proponents claimed

1. SECOND AP-
PEAL.
and received compensation from the executors of the will of 1868, the proponents are estopped from prosecuting this appeal. That a second appeal cannot be taken while the first is pending is evident, for the cause is then before the Supreme Court for consideration. *Newbury v. Getchell & Martin Lumber Co.,* 106 Iowa, 140. But after that has been dismissed on motion of appellant the judgment in the district court stands precisely as before, and is subject to review if the second appeal is perfected within the time fixed by statute. *Groendyke v. Musgrave,* 123 Iowa, 535. Here the second appeal was perfected within six months of the entry of the *nunc pro tunc* judgment, but not until nearly eighteen months after the return of the

verdict and the date as of which the judgment *nunc pro tunc* was entered, and it is argued that this was not in time.

In *Callanan v. Votruba,* 104 Iowa, 672, we held that there is no judgment until that rendered is actually spread upon the records of the court, and in *Kennedy v. Citizens'* 2. Time for Taking Appeal. *Nat. Bank,* 119 Iowa, 123, that appeal may not be taken from the mere order for judgment by the judge not entered of record. In *Carter v. Sherman,* 63 Iowa, 689, the parties agreed that judgment might be entered in vacation as of the September, 1882, term of court, which adjourned during that month. The decision was not made until December 19th of the same year, and the court held that the time within which an appeal might be taken should be computed from the actual entry of the judgment, rather than from the date as of which it was rendered. In principle these decisions are controlling, for in effect they lay down the rule that the period within which an appeal may be taken begins to run from the entry of the judgment of record, regardless of when announced orally or in writing by the judge, for until then there is no judgment from which an appeal may be taken. For some purposes the judgment may relate back, may be now as of then, but not in respect to procedure essential to secure a review, else a mere ministerial officer of the court, by omitting to make the proper entry, might defeat the right of an appeal entirely. As directly in point, see *Andrews' Adm'r v. Branch Bank at Mobile,* 10 Ala. 375; *In re Fifteenth Avenue Extension,* 54 Cal. 179; *Coon v. Grand Lodge, etc.,* 76 Cal. 354 (18 Pac. Rep. 384); *Johnson v. Smith,* 14 Tex. 412. The appeal was in time.

But it is said that the entry in December, 1901, admitting the will of 1868 to probate, was an order or judgment from which the appeal might and should have been 3. Wills: contest; appeal. taken. A sufficient answer is that the due execution of that will was not an issue in the case. True, Mrs. Sharpless alleged its existence as a basis of her

objections, but as deceased was childless she was interested to the extent of one-sixth of the estate, regardless of that will, and, doubtless for this reason, the parties stipulated that the only issue to be tried was whether deceased was of sound and disposing mind May 11, 1901, the date of the last will. See *In re Fallon's Will,* 107 Iowa, 120. The first will was not even introduced in evidence, nor was proof of its execution offered. Before it could be admitted to probate, other evidence must have been received. Whether deceased was of sound mind when he executed the will of 1901 being the only issue, an order in another matter upon which no evidence had been adduced cannot be regarded as pertaining to the case. The most that can be said is that probating the first will was likely to follow as a natural consequence the rejection of the last will. A decisive test, as we think, is that the rejection of the last will would not, under the circumstances disclosed, bar those interested from contesting the first, and this being true, the order with respect to the first must be treated as foreign to the case.

It appears that after the last will was admitted to probate the guardian *ad litem* filed with the executors thereunder a claim for legal services rendered by himself and an assistant in behalf of proponents, and that the claim was settled by the executors by the payment of $600. This is made a ground of the motion to dismiss, the theory being that, having accepted the judgment, they may not complain. But the guardian *ad litem,* in presenting his claim for services to the court, acted for himself, and did not represent his wards. Indeed, his position was somewhat adversary to their interests, as their property might be subjected to the reasonable compensation for his services. See *Tyson v. Richardson,* 103 Wis. 397 (79 N. W. Rep. 439). Moreover, the settlement of the claim does not appear to have been made dependent in any way upon anything to be done in this case, and ought not to be treated as a waiver of the right to appeal.

4. SAME.

II. Attention has been directed in previous decisions to the difference between the foundations to be laid for a nonexpert's opinion of the sanity and of the insanity of a person under investigation. See *Alvord v. Alvord,* 109 Iowa, 113; *In re Hull's Will,* 117 Iowa, 738. The facts on which an opinion that deceased's mind was unsound should appear in their natures somewhat inconsistent with mental soundness, as that the acts or talks of deceased were unnatural or unusual, or such as would not ordinarily be anticipated from a person of his character. In other words, the facts and circumstances must have been such as tended to support the witnesses' conclusion. The appellant contends that the incidents recited by the several witnesses were wholly insufficient upon which to rest an opinion. In several instances the facts might well have been more fully developed before calling for the witnesses' conclusion, but this wholesale criticism is not justified by the record. It was only necessary, as already stated, that the circumstances related tended to indicate an unsound mind. Undoubtedly the witness must have enjoyed adequate opportunity of observing deceased's capacity, but habits of observation, as well as conditions of the subjects of investigation, differ so radically that no general rule as to what character or number of circumstances shall be related before the witness may speak his opinion can be laid down. See Wigmore's Evidence, section 689. Having indicated some facts which tend to support the opinion to be given, the witness should be allowed to express it, and its value, as well as the effect thereon of any explanatory circumstances, as that the condition was produced by a stroke of apoplexy, is for the determination of the jury, rather than the court. As the testimony may not be the same on another trial, it is unnecessary to review specific rulings.

5. Insanity: non-expert opinion.

III. On direct examination of Mrs. Stutsman no reference was made to any conversation with deceased concerning the making of a will. The matter was referred to in

cross-examination, without objection, but in re-cross-examination entered into, over the proponent's objection, with much particularity. This was error,

6. EXAMINATION OF WITNESS.

being improper cross-examination, and prejudicial, as the interrogations carried the intimation that she had pressed inquiries concerning the making of his will upon him when in a feeble condition, and that her affections for her uncle, who had reared her, were merely mercenary. The issue to be tried was the condition of deceased's mind, and not that of contestant or the mother of proponents.

IV. When a will is assailed as being unreasonable or unjust, evidence of the financial condition of those having claims on the bounty of deceased, and likely to have been taken into consideration by him, if in a normal condition of mind, in executing his will, is received. *Manatt v. Scott,* 106 Iowa, 203; *Sim v. Russell,* 90 Iowa, 656. But the rule ought not to be extended so as to include proof of mere expectancies, unless of such a nature as likely to have been known and considered by him. On this ground evidence of the value of the estate of one Smith, grandfather of proponents, living in Ohio, was improperly admitted. As the children were in the care of their mother, her means of providing for them might well have been considered. Proof that the homestead was in contestant's name, and that she owned eighty acres of land valued at $3,000, was rightly received.

7. EVIDENCE: financial condition of beneficiaries.

V. With reference to the opinions of physicians, based on hypothetical questions, the court instructed the jury that:

8. INSTRUCTIONS: expert testimony.

The value of such opinions depends upon whether the facts upon which they are based are the facts as shown by the evidence in this case as applied to Mr. Sharpless. If the evidence does not substantially sustain the hypothesis or supposed state of facts presented in the question to the witness, then the opinion would be of less value than if the facts presented were sustained or established by the evidence — how much less in value depends upon the materiality of the

variance, if any, between the facts in the question and the true facts as the evidence shows them to be. So that, when you ask yourself what weight should be given to the opinions based upon assumed facts stated in hypothetical questions, you will ask yourself whether the acts, conduct, language, demeanor, and conditions stated in the supposed case upon which the opinion is based were substantially the acts, conduct, language, demeanor, and conditions of Mr. Sharpless, as shown by the evidence in this case, and, if not, then in what particulars are they different, and if materially different, then the opinion is entitled to less weight or no weight at all, depending upon the extent to which the facts in the question differ from the facts shown in the evidence. Considering, therefore, the true facts as to the said Sharpless as shown by the evidence, and comparing the same with the supposed state of facts presented to the witnesses upon which they based their opinion, give the same weight to which you find them justly entitled, if any, or no value at all, as you find the facts will warrant.

This form of instruction has been twice condemned by this court, first in *Hall v. Rankin,* 87 Iowa, 261, and, since the trial of the instant case, in *Kirsher v. Kirsher,* 120 Iowa, 337. It will not do to allow juries to say what facts were material in securing the opinion of the medical expert, and to what extent a variance in the facts would have changed his opinion. The only safe rule is to reject the opinion unless the facts hypothetically stated are established by the evidence. If a portion of the facts are to be eliminated, the witness, and not the jury, should be permitted to estimate the difference this change would effect in the opinion he has expressed. Other matters are discussed, but, in view of another trial, do not require special attention.— *Reversed.*