E. A. WEIBEL, Appellee, v. BOSTON PIANO & MUSIC COM-
PANY et al., Appellants.

PLEADING:    Answer—Denials—Sufficiency.    A *general* allegation
by plaintiff that he has complied with all conditions which are
precedent to his right to recover on a contract, is not put in
issue by a *general* allegation by defendant of noncompliance
by plaintiff.    *Defendant must specifically state wherein plain-*
*tiff has failed to comply with said conditions.*    (Section 3628,
Code, 1897.)

EVIDENCE:    Relevancy, Competency and Materiality—Increase of
Sales—Prior Amount of Business.    On the issue whether a
dealer's business had increased during a certain stated time,
evidence is admissible as to the amount of business transacted
during the same period immediately preceding the commence-
ment of the time in issue.

CONTRACTS:    Construction—Implying Impracticable Conditions.
A persuasive argument for rejecting a construction contended
for is that it would render the other party to the contract
practically remediless.

*Appeal from Johnson District Court.*—R. P. HOWELL, Judge.

WEDNESDAY, JUNE 20, 1917.

REHEARING DENIED SATURDAY, SEPTEMBER 29, 1917.

ACTION on the contract resulted in judgment as prayed.
The defendants appeal.—*Affirmed.*

*C. H. Van Law* and *Otto & Otto,* for appellant.

*Remley & Abrams* and *J. E. Jordan,* for appellee.

LADD, J.—I.    The defendant is a corpo-
ration engaged in developing the business
of retail merchants by systematic advertis-
ing, and incidentally in selling to said mer-
chants at a profit goods such as pianos, watches, sewing ma-

chines and the like, to be given as prizes. The plaintiff was engaged in the hardware business at Fairbanks, and on March 12, 1914, entered into a contract with defendant by signing an order, which was accepted, for one piano, one gold watch or sewing machine, and a large amount of advertising matter, due bills, pledge or patronage cards, one book entitled "How to Start a Contest," another on "The Art of Successfully Conducting a Piano Contest," and a third known as a "Model Ad Book." The plaintiff undertook to pay therefor $358, as follows: One fourth within 90 days from date of shipment, and the balance in eight equal payments, two months apart, the first to be due in five months. Under the head of "Assurance of Trade" was this stipulation:

"As a further consideration, it is hereby mutually agreed that in the event twenty-five per cent. of the dealer's increase in trade, during a period of thirteen months from the date of this order, does not equal the sum of $400, the said piano company will make up the difference between said sum and twenty-five per cent. of the actual increase in trade. It is expressly understood that this provision is effective only when the dealer makes satisfactory proof of the deficiency herein referred to, and complies in every respect with the terms of this order given to the said piano company, as well as promptly meeting his obligations with reference thereto."

The plaintiff alleged the making of the contract, including portion thereof as quoted, and that he had fully complied with all its conditions; that his business had not increased during the 13 months of the piano contest as warranted, but had actually decreased; and he prayed for judgment in the sum of $400. The defendant, in the first division of the answer, admitted having entered into the contract, but denied each and every other allegation; in the second division, it alleged that no proof of deficiency in the increase

of trade had ever been furnished the defendant; and in the third division, pleaded generally the purposes of the contract, and that plaintiff undertook generally to pursue the methods outlined therein; that plaintiff failed to follow the instructions and suggestions contained in the book furnished, "How to Start a Contest;" also failed to obey instructions included in the book entitled "The Art of Successfully Conducting a Piano Contest;" and also failed to give heed to the suggestions in the book known as "Model Ad Book," and in many other respects and particulars failed to pursue the course outlined in the instructions supplied him; and defendant prayed that it be permitted to go hence with its costs.

The plaintiff moved to strike the third division from the answer, for that (1) the allegations therein did not constitute a defense; (2) the contract did not require plaintiff to follow the suggestions and instructions mentioned as a condition precedent to compliance with the assurance of trade clause; (3) the defense was sham in that it failed to specify what plaintiff ought to have done which he did not do, or any breach in the performance of the contract by plaintiff. This motion was sustained, and, as we think, rightly so. The plaintiff had pleaded the contract and full performance, as permitted by Section 3626 of the Code, 1897, and Code Section 3628 expressly declares that, in controverting such allegation of performance, "it shall not be sufficient to do so in terms contradictory of the allegation, but the facts relied on shall be specifically stated." The only portion of the third division of the answer which could be claimed to be at all specific is that which avers failure to comply with the instructions and suggestions of the books named. But there was no intimation as to what these books contained, save as found in their titles. This being so, it needs hardly to be said that, inasmuch as the facts were not "specifically stated," in order to have put in

issue the alleged performance of the contract by plaintiff, the defendant should have specified the particular respect in which plaintiff had failed to comply with some condition or undertaking of the contract. *Knapp v. Brotherhood of American Yeoman,* 139 Iowa 136; *Stork v. Supreme Lodge of Knights of Pythias,* 113 Iowa 724; *Richards v. Hellen & Son,* 153 Iowa 66; *Krause v. Modern Woodmen,* 133 Iowa 199.

The bringing of suit on a contract necessarily is on the theory of performance on the part of plaintiff; and, instead of exacting allegations concerning each detail, a general assertion of complete performance is deemed to cover all separately, and the defendant in his answer is required to point out specifically the particular instances of delinquency on plaintiff's part, and aver the facts with reference thereto. This simplifies the issues, and avoids the incumbrance of the record with needless reference to portions of the contract not drawn into the controversy. The third division of the answer did not direct attention to the facts, but pleaded nonperformance in terms nearly as general as performance had been alleged in the petition. It should have pointed out specifically wherein plaintiff had not done as he had undertaken, and thereby particularized the issues, to the end that the parties might have known in advance the precise questions involved. The third division of the answer was rightly stricken.

II. As tending to prove that plaintiff's trade did not increase during the 13 months following the making of the contract, evidence was received, over objection, tending to prove the amount of his trade during this period and the amount thereof during the preceding 13 months. The objection is on the theory that any increase must be traced to and shown to have been con-

2. EVIDENCE: relevancy, competency and materiality: increase of sales: prior amount of business.

sequent on the piano contest and advertising in pursuance of the contract. To so do would seem utterly impracticable, for a merchant could not be expected to ascertain what influenced each customer to buy, nor would all customers be able to detail precisely the influences leading him to bestow his patronage on one merchant rather than another.· Nor does the contract so specify. The portion of the contract quoted does not define how the increase shall be ascertained. It only purports to specify on what condition $400, or that amount less 25 per cent. of the increase, shall be paid to plaintiff. In not.limiting said increase to that occasioned by the enterprise undertaken, the parties evidently recognized the impracticability of tracing any increase in business definitely to such a cause, and therefore referred to any increase of business which might come. This being so, it would seem that the previous trade of plaintiff would furnish a fair criterion in ascertaining whether it had increased and how much. Of course, previous trade might have been abnormal or unusual for some reason, and this might well be considered in determining whether there had been any actual increase, and if so, how much. But no such evidence was adduced, and defendant rested on its contention that the undertaking to pay the difference between $400 and 25 per cent. of the increase in plaintiff's trade might be demanded only upon a practically impossible showing of such deficiencies by specific proof of the actual amount attributable to the methods prescribed and pursued in pursuance of the contract. We are not inclined to so construe the contract, and are of opinion that the evidence of the amount of plaintiff's trade during the 13 months under the contract and a like period previous thereto was admissible, and that, in the absence of any other showing, it was conclusive as to plaintiff's trade's having increased.

3. CONTRACTS: construction: implying impracticable conditions.

III. The court's ruling in permitting the plaintiff to

explain that he had compared his trade for 13 months under the contract with the 12 months previous, because of an explanation by the defendant's agent, was entirely without prejudice, for he immediately testified to his trade during the periods of 13 months each.

The judgment is—*Affirmed.*

GAYNOR, C. J., EVANS and SALINGER, JJ., concur.