IN RE ESTATE OF ISAAC FETTERMAN.

AMY SCARBER, Appellant, v. J. Q. McKINNON, Executor, Appellee.

JANUARY 8, 1929.

*McCoid, McCoid & McCoid,* for appellant.

*J. V. Gray,* for appellee.

*F. S. Finley, Vance & Haugen,* and *Thoma & Thoma,* for certain heirs.

WAGNER, J.—The testate, Isaac Fetterman, died October 15, 1926. He left surviving him his widow, Emma Fetterman, to whom he was married on March 7, 1925, and he left as his surviving issue his two daughters,—to wit, the claimant and Ida Sawyer,—and children of Addie Jacobs, a predeceased daughter.

It appears that the deceased and claimant and her husband became involved in financial entanglements, in which the deceased was making certain claims against his daughter, and they were also making certain claims as against him. The deceased had brought suit against the claimant, aided by garnishment proceedings. Said suit was not brought to trial, but as a settlement between the parties thereto, on July 16, 1925, the following written contract was entered into between them:

"This contract made and entered into this 16th day of July, 1925, by and between Isaac Fetterman, party of the first part, and Amy Scarber, party of the second part, witnesseth:

"Whereas, party of the first part holds a note, executed by J. L. Scarber and Amy Scarber, in the amount of two thousand dollars ($2,000.00), dated May 28th, 1924, payable to the order of Isaac Fetterman, and due one year after date and which is now due and unpaid and

"Whereas, party of the first part has other and different demands against the said party of the second part or her husband, J. L. Scarber and

"Whereas, on or about the 16th day of March, 1925, said party of the first part instituted a suit in the district court of the state of Iowa, in and for Henry County, against party of the second part by attachment and therein claiming the sum of one thousand three hundred sixty-five dollars and fifty cents

($1,365.50) for money loaned and also the said sum of two thousand dollars ($2,000.00) on the note hereinbefore recited, and in said suit, garnished Amy Scarber, administratrix, with will annexed, of the estate of Emily J. Johnson, deceased, J. V. Gray, referee in partition, and J. E. Carter, executor of the estate of Virginia Louisa Fetterman and

"Whereas, said party of the first part is obligated as either joint maker or endorser, upon a note for four thousand dollars ($4,000.00) dated May 28th, 1924, due one year after date and in favor of the New London National Bank of New London, Iowa, the other maker of said note being J. L. Scarber, which said note is past due and unpaid and

"Whereas, party of the second part claims that the note for two thousand dollars ($2,000.00) hereinbefore recited, due May 28th, 1925, in favor of first party was a gift and without validity and binding effect and

"Whereas, party of the second part has heretofore made claim against party of the first part for services rendered by herself or her husband or both of them to the said first party or his deceased wife, Virginia Louisa Fetterman and

"Whereas, parties of both parts hereto desire, at this time, to adjust and fully and completely settle all claims, demands and controversies.

"Therefore, be it fully understood, agreed and stipulated in the following manner and terms, to wit:

"1. The party of the second part hereby undertakes and agrees within five days from the execution of this contract, to relieve and save harmless the party of the first part from any liability upon the said note for four thousand dollars ($4,000.00), dated May 28th, 1924, due one year after date in favor of New London National Bank of New London, Iowa, upon said note, first party and J. L. Scarber are makers. Said party of the second part agrees to deliver or cause to be delivered to said first party, said note within said fixed time.

"2. It is further agreed by and between the parties hereto that the party of the second part shall pay to the party of the first part, the sum of one hundred dollars ($100.00) a year, to be paid semiannually, the first payment of fifty ($50.00) to be made on January 16th, 1926, and thereafter on the 16th day of July and the 16th day of January of each year, she shall

pay to him the sum of fifty dollars ($50.00) during the remainder of his natural lifetime and that at the death of the said Isaac Fetterman, there shall be charged against Amy Scarber, party of the second part, against her share in said estate, the sum of two thousand dollars ($2,000.00) as an advancement to her.

"3. It is further agreed by and between the parties hereto that in consideration of Amy Scarber entering into the stipulation of settlement and assuming the payment of four thousand ($4,000.00) note of her husband at the New London National Bank, on which Isaac Fetterman is surety, that said Isaac Fetterman will make a will, willing to Amy Scarber, one third of all his property he now has.

"4. In consideration of the foregoing covenants on the part of the second party, party of the first part agrees, on their performance, that he will dismiss his case pending in the district court of the state of Iowa, against party of the second part, and will thereupon cancel, remit and forgive any and all other demands which he has against party of the second part.

"5. Party of the second part, in consideration of the covenants of the first party, on her part, hereby cancels, releases, forgives and remits any and all demands which she has, at this time, or had had heretofore, by herself or husband, including all claims and all matters of indebtedness against said party of the first part, or the estate of his deceased wife, Virginia Louisa Fetterman.

"6. By this stipulation of settlement, it is further agreed that all matters of dispute and all claims and demands of every kind whatsoever of either party hereto against the other party are settled, released and cancelled and that any and all claims of Isaac Fetterman as against J. L. Scarber, the husband of Amy Scarber, are likewise cancelled, settled and released, and any and all claims of the said J. L. Scarber against the said Isaac Fetterman or the estate of his wife are hereby released and cancelled.".

On July 28, 1925, the decedent executed his last will and testament, ordering and directing therein that his executor pay off and discharge all the debts and liabilities that might exist against him at the time of his decease. The remaining provisions of his will are as follows:

"2nd. I give and bequeath to my wife, Emma Fetterman, at my death one third (1/3) of all my real and personal property, during her life and at her death the property is to be divided equally between my heirs.

"3rd. I give and bequeath to Ida Sawyer, at my death, one third (1/3) of all my real and personal property.

"4th. I give and bequeath to the heirs of my deceased daughter, Addie Jacobs, at my death one third (1/3) of all real and personal property.

"5th. I give and bequeath to my daughter, Amy Scarber, at my death one third (1/3) of all real and personal property, excepting $2,000.00 (Two Thousand Dollars) which she has already received which should be deducted from her share of my estate, and divided equally between the other heirs, Ida Sawyer, the heirs of Addie Jacobs, deceased."

Said will was duly admitted to probate. The widow elected not to take under the will of her deceased husband.

The claimant, in her claim against the estate, alleges the execution of the aforesaid written contract between her and her father; that, at the time of the signing of said contract, her father owned property to the value of $45,000; that, by the terms of said contract, there was to be charged against her the sum of $2,000 as an advancement; that she has performed all the obligations of the aforesaid written contract which were to be performed upon her part, and the said Isaac Fetterman failed to make a will willing to her one third of all the property he owned on the 16th day of July, 1925. She asks that her claim be allowed in the sum of $13,000.

The executor in one count of his answer sets up a general denial. In another count he alleges that the agreement has been breached by claimant, and that she has wholly failed to perform the obligations imposed upon her under the written agreement. In another count of his answer he alleges full performance of the written contract by the decedent. In still other counts of his answer he alleges want of consideration, failure of consideration, estoppel, and fraud by reason of fiduciary relationship existing between the claimant and her father.

The plaintiff's reply to the averments of the answer consisted of a general denial and certain admissions therein made.

At the trial, the claimant proved the execution of the afore-

said written contract, and the same was introduced in evidence. The will and the fact of its admission to probate were admitted in evidence, and the fact that the widow elected not to take under the will became a part of the record. The record fails to reveal the fact as to whether or not notice of the appointment of the executor was given, or if given, when given. It is shown that the will was filed on the 15th day of October, 1926. The trial was had in the district court, beginning the 11th day of October, 1927. The total claims filed against said estate, as shown by the record, are approximately $1,162.70. The executor's inventory, introduced in evidence without objection, shows cash on hand in the amount of $42.47, a United States Liberty Bond in the amount of $1,000, three certificates of deposit, amounting to $2,326.54, and notes in the amount of $25,117.87. All of said notes bore date prior to the date of the aforesaid contract, except four, in the principal sum of $540. It is shown that all of said notes are good, and that most of them had been paid to the executor at the time of the trial. It was shown that the deceased, on March 14, 1925, received, as his share of the proceeds resulting from a certain partition suit, the sum of $5,914.52. It is also shown that all of the notes listed in the inventory bore date prior to March 14, 1925, except the four hereinbefore mentioned, amounting to $540, and except, also, a $1,000 note which bore date of March 19, 1925. It was also shown that the decedent is entitled, on distribution, to one third of $680.99 from an estate which was in process of settlement on the date of the execution of the aforesaid contract. The record also reveals that the decedent, on the date of the execution of the aforesaid contract, was the owner of certain real estate, the value of which is approximately $3,600, and that, on September 15, 1925, he became the owner of another lot, valued at $1,800 to $3,000.

In this state of the record, the claimant rested her case, and the defendant executor moved for a directed verdict, the motion being based upon the following grounds: (1) That the plaintiff has failed to show performance on her part of the written contract; that, the obligations of said contract being mutual and dependent, the claimant is not entitled to recover for any alleged breach of contract by the decedent without showing full performance by her of the promises which she was obligated to

perform; (2) that she had failed to show any damage to her; (3) that, under the evidence, no breach of contract by the decedent was shown; and that, in the light of circumstances, the contract should be construed to mean that the decedent would will to the claimant one third of his property he then had, subject to the distributive share in his estate on the part of his wife.

The court sustained said motion generally. It appears that, during the argument on the motion for directed verdict, one of the claimant's attorneys stated to the court that, if he was of the opinion that it was claimant's duty to go forward with the proof as to the performance of the contract on her part, he would ask that the case be reopened for that purpose. The record is silent as to what, if anything, was said by the court in response thereto. As aforesaid, the motion was sustained generally. At this juncture, there occurred between one of plaintiff's attorneys and the court the following: ·

"Plaintiff's attorney: I desire to make an offer; will the case be opened for the purpose of making the offer? It might show the witness on the stand?"

"Court: Yes."

"Plaintiff's attorney: Let the record show that she is on the stand."

"Court: Let the record show that you offer to put her on the stand."

The claimant's attorney then offered to prove by her and E. E. McKee, a banker, that, on the date the contract was made, the claimant went to the New London National Bank, and paid on the $4,000 note referred to in the contract, which was signed by the decedent as surety, the sum of $1,795.53; that, on the 17th day of July, she went to the bank, and, in the presence of the decedent and E. E. McKee, an oral agreement was entered into between decedent and the claimant that she should deposit in said bank a time certificate of deposit in the sum of $1,100 which she had on said bank, and a time certificate of deposit for $3,658 on the Farmers Bank of New London, and that the remainder of the $4,000 note was to be paid out of these certificates; that the bank should take it out of these certificates and apply it on the note; that, at the time, the following

original agreement was drawn up, which was consented to by Isaac Fetterman, viz:

"New London, July 17, 1925. To whom it may concern: For the consideration of leaving Mr. Isaac Fetterman's name on a certain note due the New London National Bank originally for $4,000.00, Mrs. Amy Scarber, administrator, agrees to pay this note from the time deposits in the New London National Bank for $1,100.00 and a time deposit in the Farmers Bank for $3,658.00 as soon as the court will allow her to use this money."

He further offered to prove that said original agreement was signed by Amy Scarber on the 17th day of July, and given to Isaac Fetterman, and that the same is now in the possession of the administrator; that Isaac Fetterman there at the time consented to this arrangement, in lieu of her paying the note in five days, and that, later on, September 29, 1926, the note was actually paid by Amy Scarber out of said deposits, as guaranteed, and the note was delivered to Isaac Fetterman, and is now in the possession of the executor; that Amy Scarber, on January 16, 1926, paid to Isaac Fetterman $50 on the $2,000 note, as provided in the contract, and has his receipt therefor; that, on July 16, 1926, she paid him a second $50 on said note, and holds his receipt therefor; that, on October 5, 1926, she paid him another sum of $50, which would not be due until January, 1927, and holds his receipt therefor. To this offer the defendant objected, as coming too late, and for the further reason that the claimant has wholly failed to complete the waiver of the terms and conditions of the contract, and that such evidence could only be competent to show waiver, and, no waiver being pleaded, it would, therefore, be incompetent. The court then made the following declaration: "The cause is opened for the purpose of making the record, is all, and not to be submitted to the jury." The jury then returned a verdict as had been previously directed by the court, and the court immediately, on October 13, 1927, rendered judgment thereon against the claimant for costs.

Two days later, the claimant filed her motion for a new trial, based solely upon the alleged error of the court in sustaining defendant's motion for a directed verdict and in re-

260

fusing to open the case for the introduction of additional evidence. On October 31, 1927, said motion was overruled.

The first thing claiming our attention is a motion by the appellee to dismiss the appeal, for the reason, as claimed, that the appeal was perfected on November 2, 1927, and that appel- lant's abstract was not filed within 120 days after the appeal was taken and perfected. The abstract was filed March 8, 1928. It will be observed that the judgment was rendered on October 13, 1927, and that the motion for a new trial was overruled on October 31, 1927. A notice of appeal from the judgment rendered on October 13, 1927, was served upon one of the attorneys for the appellee on October 28, 1927, and upon the clerk of the district court on November 2, 1927, on which latter date it was filed with the clerk. Since, under the provisions of Code Section 12837 of the Code of 1927, an appeal is taken and perfected by the service of a notice in writing on the adverse party, his agent, or any attorney who appeared for him in the case in the court below, and also upon the clerk of the court wherein the proceedings were had, the appeal from the judgment had not been perfected at the time when the court overruled the motion for a new trial, said appeal having been perfected two days after the overruling of the motion. Section 12848 of the Code provides that:

"If the abstract is not filed within 120 days after the appeal is taken and perfected, or is not filed within the further time as fixed by the court or judge, the appellee may file an abstract of such matters of record as are necessary, or may file a copy of the final judgment or order appealed from, or other matters required, certified to by the clerk of the trial court, and cause the case to be docketed, and the appeal upon motion shall be dismissed, or the judgment or order affirmed."

There was no extension of time granted by this court, or any judge thereof, for the filing of the abstract. More than 120 days elapsed from the time when the appeal from the judgment was taken, on November 2, 1927, and the 8th day of March, 1928, when the abstract was filed. We have recently held, in *Botna Valley State Bank v. Cary*, 205 Iowa 913, and *Leach v. Mechanics' Sav. Bank* (Iowa), 218 N. W. 907 (not officially reported), that, under such circumstances, the appellee is entitled to have his motion for dismissal of the appeal sustained.

However, it is shown by the record that, on February 29, 1928, the appellant perfected her appeal from the order of the trial court overruling the motion for a new trial, and it is claimed by the appellant that she had the legal right to appeal from said ruling, and that, since the abstract was filed within 120 days thereafter, the matters presented by said appeal are properly before us for our determination. It is provided by Subdivision 3 of Section 12823 of the Code that an appeal may be taken from an order refusing a new trial. In *Pride v. Inter-State Bus. Men's Acc. Assn.*, 207 Iowa 167, we have recently held that one has a right to appeal from the order overruling the motion for a new trial within four months from the entry of said order. Also, see *Mueller Lbr. Co. v. McCaffrey*, 141 Iowa 730. It is true that we have held that a second appeal cannot be taken while the first appeal is pending. *Stutsman v. Sharpless*, 125 Iowa 335; *Newbury v. Getchell & Martin Lbr. & Mfg. Co.,* 106 Iowa 140. But our pronouncement in those cases applies only where the second appeal was from the same order or judgment from which the first appeal was taken. It is also true that, under the record in this case, there is nothing involved in the appeal from the order overruling the motion for a new trial that is not involved in the appeal from the judgment. Appellee's motion is based solely upon his claim that the appeal was perfected on November 2, 1927, and the abstract not filed within 120 days from that time. Whether the appellant, in appealing from the judgment rendered on October 13, 1927, waived her right to appeal from the order of court overruling the motion for new trial on October 31, 1927, is not raised by appellee's motion; and for said reason we make no pronouncement thereon. Since appellee's motion is merely to dismiss the appeal which was taken on November 2, 1927, we hold that the appeal of February 29, 1928, from the order overruling the motion for new trial, is before us for our consideration.

Now, what as to the merits of the appeal? The appellant bitterly complains because of the court's refusal to reopen the case to receive the offered evidence hereinbefore mentioned. The plaintiff had rested. The motion for directed verdict was before the court for his determination. The appellant's counsel conditionally stated that, if the court was of the opinion that it was claimant's

duty to go forward with the proof as to the performance of the contract on her part, he would ask the case to be reopened for that purpose. For aught that appears in the record, the court said nothing as to his belief in that regard. The appellant made no unconditional demand that the case be reopened. The court merely sustained the motion for directed verdict, and then appellant's attorney made the offer of the testimony; as hereinbefore mentioned. No unconditional demand or request for reopening of the case was made by the appellant, either before or after the sustaining of appellee's motion for a directed verdict. Section 11505 of the Code provides that, at any time before the cause is finally submitted to the court or jury, either party may be permitted by the court to give further testimony to correct an evident oversight or mistake. The provisions of said section are not mandatory, but discretionary. We have frequently held that the matter of reopening a case for the introduction of additional testimony is within the sound discretion of the trial court, and that the case will not be reversed for failure to permit it, unless it appears that there has been an abuse of discretion. See *Simpson College v. Executors Mann Estate*, 203 Iowa 447; *State v. Crayton*, 138 Iowa 502; *Cresco Union Sav. Bank v. Terry & Terry*, 202 Iowa 778; *Steckel & Son v. Smith*, 181 Iowa 361. It is sufficient to say that we find no abuse of discretion in this respect on the part of the trial court.

The appellant was undoubtedly contending, as she is in this court, that, under the issues as made, there was no duty resting upon her to prove performance by her of the covenants or  promises which she was obligated by the written contract to perform. Appellant's contention is that the pleadings raise no issue as to the performance of her promises. She relies on Sections 11206 and 11208 of the Code. It is provided in the first of said sections that:

"In pleading the performance of conditions precedent in a contract, it is not necessary to state the facts constituting such performance, but the party may state generally that he duly performed all the conditions on his part."

It is provided by the latter section that, if the allegations as to performance of conditions precedent in a contract are con-

troverted, it shall not be sufficient to do so in terms contradictory of the allegations, but that the facts relied on shall be specifically stated. Appellant contends that appellee's general denial and the averments that the agreement has been breached by claimant, and that she has wholly failed to perform the obligations imposed upon her under the written agreement, in no way raise an issue as to appellant's performance of her promise. Appellant's promise to deliver the $4,000 note in five days' time was not a "condition precedent in the contract," within the meaning of the aforesaid sections of the Code, but was a covenant on her part, upon which depended the liability of her father to perform what she alleges that he failed to do. Her promise was the consideration of his promise. The appellant relies on *Weibel v. Boston Piano & Music Co.*, 181 Iowa 199, and the cases therein cited. In the *Weibel* case, the thing had happened which entitled the plaintiff to recover, provided that he had complied with other matters which were conditions to his right of recovery. In *Knapp v. Brotherhood of American Yeoman*, 128 Iowa 566, and 139 Iowa 136, Knapp's life was insured in favor of the plaintiff, and one of the conditions of the certificate was that no action should be maintained thereon unless a board of three arbitrators, to be selected as therein provided, should fail to settle the claim made under the certificate. Knapp was dead, and the plaintiff was entitled to recover, provided that she had complied with this condition. Said cases are not applicable to the provisions of the contract involved in the instant case. Where there is a promise by one which forms the consideration for a promise by another, a failure of the party so promising to perform will discharge the other, and one cannot maintain an action against the other without showing performance or a tender of performance on his part, the general rule being that a person who has himself broken a contract cannot recover on it. 13 Corpus Juris 627. In *Floyd & Newland v. Serenado Mfg. Co.*, 196 Iowa 6, we held that, if the terms of the contract are concurrent and dependent, one party thereto cannot maintain an action against the other for breach of the contract without showing a performance or a tender of performance of the contract on his part. See, also, 25 Ruling Case Law 335; 6 Ruling Case Law 943. In *Harris v. Moore*, 134 Iowa 704, we held that, before recovery could be had by the plaintiff for a commission for

the sale of defendant's real estate, it was necessary for the plaintiff to plead and prove a performance of his contract, and that, under a general denial, the defendant had the right, not only to offer testimony in denial of the contract as claimed by the plaintiff, but also to prove the contract which was in fact made, and that there had been no performance on the plaintiff's part.

Without further discussion, we hold that claimant's promise was a binding covenant to be performed by her, and that, unless it was performed, she could not insist upon performance by her father, and that said covenant by her was not a "condition precedent in the contract," such as were those in the cases relied upon by the appellant. The issue was raised by the defendant's answer. Therefore, when the claimant rested, she had not made out a case, and the motion for a directed verdict was properly sustained, on the ground that the plaintiff had failed to show performance of the written contract on her part.

Since we hold that there was no abuse of discretion on the part of the trial court in not reopening the case, and that its action in overruling the motion for a new trial raising these propositions was correct, the same is hereby affirmed.—*Affirmed.*

ALBERT, C. J., and EVANS and KINDIG, JJ., concur.

STEVENS, J., concurs in the result.