**JOHN & DAVE, LLC, Plaintiff,**

v.

**SOCIETY INSURANCE, Defendant.**

**No. C12–4089–LTS.**

United States District Court,
N.D. Iowa,
Western Division.

Feb. 21, 2014.

James C. Larew, Larew Law Office, Iowa City, IA, Shannon M. Henson, Travis James Burk, Hope Law Firm PLC, West Des Moines, IA, for Plaintiff.

David Noel May, David J.W. Proctor, Caroline Kay Bettis, Bradshaw, Fowler, Proctor & Fairgrave, PC, Des Moines, IA, for Defendant.

## ORDER

LEONARD T. STRAND, United States Magistrate Judge.

### TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 786

II. PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 786

III. RELEVANT FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 787

IV. SOCIETY'S MOTION FOR SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . . . . . 791
 A. Summary Judgment Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 791

B. Discussion ......................................................792
 1. Breach of Contract ..........................................792
 a. Can Society Rely On Its "Noncompliance" Arguments? ..........794
 b. The Merits Of The "No Breach" Argument. ......................794
 2. Bad Faith ................................................795
 a. Reasonable Basis ......................................796
 b. Knowledge ..........................................798
 3. Punitive Damages ..........................................798
C. Conclusion—Motion for Summary Judgment ......................799

V. JOHN & DAVE'S MOTION TO STRIKE REPLY ..........................799

VI. CONCLUSION .................................................799

## I. INTRODUCTION

This case is before me on two related motions: (1) defendant's motion (Doc. No. 18) for summary judgment and (2) plaintiff's motion (Doc. No. 29) to strike defendant's reply in support of its motion for summary judgment. With regard to the motion for summary judgment, plaintiff has filed a resistance (Doc. No. 21) and defendant has filed the disputed reply (Doc. No. 28). I conducted a hearing on January 29, 2014. Plaintiff was represented by attorneys Travis Burk and Shannon Henson. Defendant was represented by attorneys Caroline Bettis and David May.

The motion to strike was filed one day before the summary judgment hearing. While it was discussed during the hearing, I gave defendant the opportunity to file a written resistance, which it did on February 7, 2014 (Doc. No. 32). Both motions are now fully submitted.

## II. PROCEDURAL HISTORY

Plaintiff John & Dave, LLC (John & Dave) commenced this action in the Iowa District Court for Monona County on August 31, 2012. In its state court petition (Doc. No. 3), John & Dave alleges that it is insured for certain losses through an insurance policy issued by defendant Society Insurance (Society) and that it suffered covered losses as a result of a fire that occurred at its place of business on September 6, 2011. John & Dave further alleges that Society has not paid all amounts due and owing under the policy. It asserts claims for breach of contract, unjust enrichment, reasonable expectations, insurance bad faith and punitive damages.[1]

Society filed a notice of removal (Doc. No. 2) on October 1, 2012, invoking this court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. Society alleges that it is a citizen of Wisconsin while John & Dave is a citizen of Iowa. Society also alleges that the amount in controversy in this case exceeds $75,000, exclusive of interest and costs. Society then filed an answer (Doc. No. 6) in which it denies liability to John & Dave and raises two affirmative defenses, including a defense that John & Dave may not maintain this action because it has not fully complied with all terms of the insurance contract.

On March 29, 2013, with the parties' consent, United States District Judge Mark W. Bennett transferred the case to me. See Doc. No. 11. Trial is scheduled to begin March 17, 2014.

---

1. As I will discuss further, *infra,* John & Dave has withdrawn its claims for unjust enrichment and reasonable expectations.

### III. RELEVANT FACTS

Except as otherwise noted, the following facts are undisputed for purposes Society's motion for summary judgment:

**The Parties.** John & Dave is a limited liability company organized under Iowa law. Its principals are John Sick and Dave Sick. Society is an insurance company incorporated in, and with its principal place of business in, Wisconsin.

**The Building and the Businesses.** As of September 6, 2011, John & Dave operated the following businesses in a building (Building) located at 2620 Iowa Avenue in Onawa, Iowa: (1) John & Dave, which included both the Country Cafe and 1st Place Sports Bar, and (2) Dave's World, Inc., a gas station and convenience store. The Building was owned by Nils, LLC. According to John & Dave, in 2009 Dave Sick purchased the defunct restaurant business that had operated in the Building for about $7000. He then spent several weeks remodeling the space, adding a bar area, restrooms, interior walls, a waitress station, new flooring and new ceiling tiles.

**The Policy.** The structure of the Building was insured by Acuity Insurance (Acuity). However, Society issued John & Dave a Businessowners Policy (Policy), which was in effect from January 15, 2011 to January 15, 2012. That Policy provided business personal property coverage for Country Cafe and 1st Place Sports Bar. Specific provisions of the Policy that are relevant to this case will be discussed further, *infra.*

**The Fire and the Claims.** On September 6, 2011, a fire caused damage to the Building and to John & Dave's personal property located therein. There is no dispute that the fire required the cessation of business activities for some period of time. Under the terms of the Policy, the following types of losses are potentially at issue:

 a. income lost due to the interruption of business activities;

 b. damage to leasehold improvements (as opposed to damage to the structure);

 c. damage to or destruction of equipment and inventory;

 d. cleaning costs.

John & Dave eventually decided to close their businesses permanently and contend that this decision resulted, at least in part, from Society's alleged failure to pay amounts owed under the Policy.

**The Adjustment Process.** Society assigned Senior Field Claims Representative Jim Sutter to the claim. On the day of the fire, Sutter met with John Sick and David Sick at the property and conducted an initial inspection. The next day, Sutter inspected the property a second time with Craig Schneider of EFI Global (on behalf of Society) and George Howe of Independent Forensic Investigations Corp. (on behalf of Acuity). During this second inspection, Sutter went through the building with Floyd Brunning, a representative of Paul Davis Restoration (PDR). John Sick and Dave Sick were also present for this inspection.

Brunning had initially been called by Acuity to assist with the structural damage portion of John & Dave's claim. Since Brunning was already involved with this loss, he was also asked to inventory the contents. There is some dispute as to who initially proposed having Brunning inventory the contents, and whether there was an agreement between John & Dave and Society that Brunning would do so. It is undisputed, however, that Brunning and his team did inventory the contents and make determinations as to which items were cleanable and salvageable and which items were not.

At this time, Society determined that six months was the appropriate period of time for restoration. John & Dave admit that

Society made this determination but deny Society's allegation that there was an agreement concerning the six-month period. The parties agree, however, that Society paid a $5,000 contents and inventory advance to John & Dave on September 7, 2011.

After these two initial inspections, Sutter was advised that John & Dave had retained public adjuster Jim Pierce to handle the claim on its behalf. By September 20, 2011, Sutter had received a contents inventory list prepared by Brunning and forwarded it to Pierce, who acknowledged receipt. John & Dave contend that this list addressed food and beverage items only, not all contents. The document itself confirms this, as it lists nothing but food and beverage items. Doc. No. 18–5 at 40–59. In any event, Sutter requested that John & Dave fill out the pricing for the listed contents and return the list to him with supporting documentation. On October 18, 2011, Pierce submitted a food inventory pricing list to Sutter. *See* Doc. No. 21–4 at 15–35.

Brunning submitted an estimate to Sutter on September 20, 2011, for various tasks such as the packing, cleaning and off-site storage of the building's contents. Brunning noted that the estimate was not yet approved and still under review. Doc. No. 18–6 at 2. The estimate was in the total amount of $32,435.77. *Id.* at 14. On September 22, 2011, Brunning sent a follow-up email revising the estimate to $31,451.29. *Id.* at 17–22. On September 26, 2011, Brunning sent an email message to Sutter and Pierce that included a non-salvageable, non-perishable items inventory list. *Id.* at 23–41. John & Dave does not deny that this list was sent, but state that Pierce "has no record" of receiving it. Doc. No. 21–2 at 7.

Shortly after the fire, Society retained Peters & Associates, S.C., an independent CPA firm, to assist with the business in-terruption portion of John & Dave's claim. Peters & Associates requested business records and financial documents from John & Dave. On October 14, 2012, Peters & Associates authored a letter to John Sick and Dave Sick, which discussed its need for additional documents and financial information.

As noted above, Pierce returned a food inventory pricing list to Sutter on October 18, 2011. The total claimed value of the food items was $21,621.82. The spread-sheet Pierce submitted was not in the same order as that previously prepared by Brunning of PDR. Society contends that this made the task of analyzing the Pierce list more difficult. Eight days later, Pierce sent Sutter an email message noting that John & Dave were experiencing a "negative effect" due to "the lack of payment towards their inventory." Doc. No. 18–7 at 26. Pierce also inquired as to the status of Peters & Associates' review of John & Dave's financial records. *Id.* On the same day, Peters & Associates responded to Pierce by noting that it had not yet received certain materials it had requested from John & Dave. *Id.* Also on the same day, Society issued another payment to John & Dave. The payment was in the amount of $24,725.64, representing $12,978.64 as an additional contents and inventory advance and $11, 747.00 as approximately four (4) months of lost business income.

On November 8, 2011, Peters & Associates provided a preliminary analysis of the business interruption claim, calculating a total business income loss amount through March of 2012 of $15,699. Meanwhile, Sutter wrote to John & Dave on November 10, 2011, concerning the contents and inventory claim. Sutter stated that Society was paying John & Dave an additional $19,202.30, which represented the actual cash value of John & Dave's contents and

inventory loss after application of a $1,000 deductible. Sutter also stated that Society was withholding another $15,725.65 as depreciation and that it would be payable upon a showing that certain damaged items had been repaired or replaced. Sutter asked that John & Dave notify him of its intention to repair or replace those items within 180 days of the date of the loss. Doc. No. 18–7 at 48.

On December 16, 2011, Society wrote to John & Dave regarding the business interruption claim. Society noted that it had already paid for approximately four months of business interruption and stated that it would not extend the allowable period beyond six months. Doc. No. 18–7 at 53. John & Dave note that Society has never paid the remaining two months.

*The Trouble.* Up to this point, the adjustment process was progressing in a somewhat typical fashion, with the insurer requesting information and making some initial payments, and the insured providing information and seeking more payments. The parties agree that this dynamic changed on January 10, 2012, when Pierce sent Sutter an evaluation prepared by Lawler Fixture Company (Lawler). According to that evaluation, $128,494.50 worth of John & Dave's equipment was non-salvageable and needed to be replaced. Doc. No. 18–7 at 55–57. Society states that it was surprised by this information, as PDR had previously found that each of the listed items was cleanable. John & Dave points out that PDR made these determinations before the cleaning process had been completed. Regardless, it is clear that the new evaluation had a significant impact on the parties' negotiations. Society states that the evaluation raised issues about (a) which items could be salvaged and (b) the pricing of the items at issue.

Society forwarded the evaluation to Jerry Hammer, an equipment specialist, for review. Hammer then advised Society that the cost of replacing all of the listed items would be only $69,202.95, including freight/delivery, sales tax and installation. *Id.* at 59. Thus, according to the Hammer analysis, even if each listed item was non-salvageable, the Lawler evaluation was inflated by over $59,000. Hammer also told Society that the actual cash value of the listed items was $48,315.48. *Id.*

Society advised John & Dave of Hammer's findings by letter dated January 13, 2012. Doc. No. 18–8 at 2–4. Society questioned why the listed items were being deemed as non-salvageable, noting that PDR had previously determined that they could be cleaned and used. Society requested that John & Dave make the listed items available to PDR to allow PDR to make efforts to clean them. *Id.* Also, for the first time, Society exercised its right under the Policy to request that John & Dave submit a sworn proof of loss within 60 days. *Id.*

John & Dave did not submit a sworn proof of loss within the next 60 days. Indeed, the summary judgment record reflects virtually no activity or communications between January 13, 2012, and April 6, 2012. On that date, Society sent another letter to John & Dave repeating its prior requests, including its request that John & Dave submit a sworn proof of loss. *Id.* at 6. On May 8, 2012, Pierce sent John & Dave's sworn proof of loss to Sutter. In that document, John & Dave claimed to be owed $437,120.30 under the Policy, after accounting for the Policy's $1000 deductible. *Id.* at 11. In support of the proof of loss, Pierce provided a food inventory contents list with pricing, along with an estimate of business property damage and restoration costs. *Id.* at 13–60, 62–75. Pierce also indicated that based on Society's previous letter, he had advised John & Dave to retain an attorney. *Id.* at 10.

Pierce then sent an email message to Sutter on May 8, 2012, which included a loss of income worksheet in support of John & Dave's business interruption claim. *Id.* at 77–81. Next, after receiving a letter from Sutter,[2] Pierce wrote back to Sutter to address various issues. Among other things, Pierce expressed disagreement with Society's determinations of what items were salvageable. He also complained that it was improper to deduct depreciation from John & Dave's business interruption claim. He contended that John & Dave had provided sufficient documentation to support its claims and concluded by stating: "I feel it is up to you now to use those tools we have provided and do your jobs." *Id.* at 83.

Next, Society elected to have John Ortenblad of Damage Control, Inc., conduct a re-inspection and a consultation regarding the condition and cleaning of John & Dave's kitchen equipment, contents, and other property. On June 6, 2012, Ortenblad performed a site inspection and test cleaning of the items in question. Pierce, Sutter and John Sick were present. During this inspection, Sick expressed his frustration that the claim was still unresolved. Sutter told Sick that the claim remained unresolved because of the recent contents list provided by Pierce and the items Pierce believed to be non-cleanable. Sutter also stated that he had concerns with Pierce's replacement pricing of the items he claimed were non-cleanable.

While John & Dave does not deny that this exchange between Sutter and Sick occurred, other aspects of the June 6, 2012, inspection are in dispute. For example, Society contends that John Sick expressed disagreement with Pierce's position concerning many items and, indeed, that even Pierce agreed that most items were cleanable. According to Society, by

the end of the inspection the parties were generally in agreement as to which items could be cleaned and salvaged, and which could not. John & Dave denies this.

In any event, Ortenblad authored a Summary Consulting Report dated June 30, 2012. Doc. No. 18–8 at 85–136. He noted that the parties had previously concluded that certain items were non-salvageable and, therefore, that his report addressed only those items that were still in dispute. He found that even more items were salvageable than Brunning (of PDR) had indicated back in September 2011. Pierce, however, disagreed with certain of Ortenblad's findings.

Meanwhile, on June 26, 2012, Pierce provided Sutter with handwritten pricing for a portion of the non-salvageable, non-perishable items inventory list that Sutter had sent to Pierce on September 26, 2011 (the list that Pierce states he has no record of receiving). Doc. No. 18–9 at 2–10. According to Society, this represented the first response John & Dave provided to Society's longstanding request for pricing concerning those items. On July 2, 2012, Pierce provided pricing information in response to the food and beverage list Sutter had submitted to him in September. *Id.* at 12–21. As noted above, Pierce had previously provided food and beverage pricing with lists that were organized differently from the lists Sutter had provided. The pricing Pierce provided on July 2, 2012, was, as he put it, "done on your paper." *Id.* at Doc. No. 18–9 at 12.

John & Dave filed suit against Society on August 31, 2012. The summary judgment record reflects no further communications between the parties between July 2, 2012, and the date this action was filed. The parties agree that Society has paid

**2.** The letter from Sutter was apparently dated May 9, 2012 (as referenced in Doc. No. 18–8 at 83). Neither party included that letter in its summary judgment appendix.

$48,927.94 to John & Dave pursuant to the Policy, which includes (1) $37,180.94 towards the contents and inventory claim, after applying the $1,000 deductible, and (2) $11,747.00 towards the business interruption claim.

**The Acuity Claim.** John & Dave contend that Acuity has paid approximately $438,000 for damage to the structure of the Building. Society denies having knowledge of the amount paid. Society does agree, however, that it reached agreement with Acuity regarding which company would pay for which items of loss.

## IV. SOCIETY'S MOTION FOR SUMMARY JUDGMENT

### A. Summary Judgment Standards

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed.R.Civ.P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

A material fact is one that " 'might affect the outcome of the suit under the governing law.' " *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, "the substantive law will identify which facts are material." *Id.* Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id.*

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman,* 953 F.2d 394, 395 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)), or when " 'a reasonable jury could return a verdict for the nonmoving party' on the question," *Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir.2005) (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348, or evidence that is "merely colorable" or "not significantly probative," *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson,* 477 U.S. at 248–49, 106 S.Ct. 2505. The party moving for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel,* 953 F.2d at 395 (citing *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods,* 415 F.3d 908 (8th Cir.2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita,* 475 U.S. at 587–88, 106 S.Ct. 1348. Further, I must

give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir.2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376–77 (8th Cir.1996).

## B. Discussion

Society seeks entry of summary judgment on each of John & Dave's claims which, originally, were: (1) breach of contract, (2) unjust enrichment, (3) reasonable expectations, (4) insurance bad faith and (5) punitive damages. In its resistance, John & Dave announced that it no longer seeks to pursue the unjust enrichment and reasonable expectations claims. Doc. No. 21–1 at 8. As such, summary judgment will be granted on those claims without further analysis. I will address the remaining claims in the order they are plead.

### 1. Breach of Contract

In its opening brief, Society listed the elements of a breach of contract claim under Iowa law.[3] It then presented an abbreviated argument—so abbreviated that I can easily quote it in its entirety:

Here, it cannot be shown that Society has "breach[ed]" the contract "in some particular way." *Id.* Rather, Society has paid what it owes. (Appx. 00017). As thoroughly discussed throughout the affidavit of Jim Sutter (Appx. 00001–00018), when Society received the necessary information and documentation from John & Dave, its public adjuster, or the experts involved concerning any element of John & Dave's claim, Society made timely payments to John & Dave, including payments for John & Dave's business interruption and damage to its equipment and inventory. (Appx. 00017). In fact, Society made two contents advances to John & Dave without receiving any of the necessary pricing information. Therefore, Society has not breached the terms of the Policy and summary judgment should be granted as to Plaintiff's breach of contract claim.

Doc. No. 18–1 at 11. Thus, Society argued—based solely on the affidavit of its own employee—that it cannot be liable for breach of contract because it "has paid what it owes."

Not surprisingly, John & Dave addressed and disputed this argument in its resistance. It contended that Society (a) paid nothing on its claim for damage to leasehold improvements, (b) did not pay the full amount of its own estimate of cleaning costs, (c) did not pay for the replacement of any kitchen equipment, (d) did not pay the full amount due for damaged food inventory and (e) paid for only four months of lost business income even though it had agreed that six months was the appropriate period. Doc. No. 21–1 at 6–7. John & Dave cited to portions of the summary judgment record, including sworn affidavits, in support of these contentions. *Id.* Regardless of whether the contentions are factually accurate, it seems obvious that there are genuine, disputed issues of material fact concerning Society's argument that it "has paid what it owes."

---

**3.** Society listed those elements as being: (1) the existence of a contract; (2) the terms and conditions of the contract; (3) that the plaintiff has performed all the terms and conditions required under the contract; (4) the defendant's breach of the contract in some particular way; and (5) that plaintiff has suffered damages as a result of the breach. Doc. No. 18–1 at 11 (citing *Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224 (Iowa 1998)). John & Dave does not dispute that these are the applicable elements.

Presumably for this reason, Society changed its attack on the breach of contract claim in its reply brief (and, for that matter, during oral arguments). Society instead focused on a different element of the claim—a plaintiff's obligation to show that it performed all the terms and conditions required under the contract. The first six pages of Society's reply brief quoted and analyzed four separate provisions of the Policy that were not referenced in Society's opening brief. Doc. No. 28 at 1–6. Those provisions include:

**5. Loss Payment**

In the event of loss or damage covered by this policy:

\* \* \*

g. We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, provided you have complied with all of the terms of this policy, and

(1) We have reached agreement with you on the amount of loss; or

(2) An appraisal award has been made.

**3. Duties In The Event Of Loss Or Damage**

a. You must see that the following are done in the event of loss or damage to Covered Property:

\* \* \*

(5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

(6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

\* \* \*

(8) Cooperate with us in the investigation or settlement of the claim.

**4. Legal Action Against Us**

No one may bring a legal action against us under this insurance unless:

a. There has been full compliance with all of the terms of this insurance; and

b. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

**C. Concealment, Misrepresentation Or Fraud**

This policy is void in any case of fraud by you as it relates to this policy at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This policy;

2. The Covered Property;

3. Your interest in the Covered Property; or

4. A claim under this policy.

*Id.* Society makes various arguments as to how John & Dave has failed to comply with these provisions. For example, Society describes various alleged events and contends that they show John & Dave did not "cooperate," as required. *Id.* at 4–5. The gist of all arguments in Society's reply relating to these Policy provisions is that John & Dave did not comply with its own obligations under the Policy and, thus, cannot recover on a breach of contract theory.

Even if John & Dave had not filed a motion to strike the reply, a substantial issue would exist as to whether Society is entitled to rely on arguments not presented in its opening brief. As such, I will address that issue first.

### a. Can Society Rely On Its "Noncompliance" Arguments?

■ The party moving for summary judgment "bears the initial responsibility of informing the court of the basis for the motion, and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact." *Gannon Intern., Ltd. v. Blocker*, 684 F.3d 785, 792 (8th Cir.2012) (citing *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir.2011) (en banc)). Once the movant identifies a basis for summary judgment, the non-movant has a burden to respond to the movant's argument. *Id.* at 792. Here, in attacking the breach of contract claim, Society's opening brief was short, clear and to-the-point. It explained that the "basis for the motion" was its argument that, as a matter of law, it "has paid what it owes." Doc. No. 18–1 at 11. While Society listed five elements of a breach of contract claim, it argued only about one element—the plaintiff's obligation to prove that the defendant breached the contract in some particular way. Society focused entirely on its own conduct, concluding that it did not breach the Policy. *Id.*

This is the argument John & Dave understandably addressed in its resistance brief. Indeed, its argument was entitled "Society Has Breached the Contract of Insurance By Failing to Pay Amounts Due and Owing to Plaintiff Under the Contract of Insurance." Doc. No. 21–1 at 5. John & Dave devoted several pages to an analysis as to why Society was not entitled to summary judgment on its "no breach" theory. *Id.* at 5–8. John & Dave concluded by asserting that "a reasonable jury could conclude the [sic] Society has breached the contract of insurance with Plaintiff in various ways." *Id.* at 8. Up to that point, both parties' written arguments concerning the breach of contract claim were focused entirely on the "breach" element.

■ And then the reply brief happened. According to that document, Society is entitled to summary judgment based on the "compliance" element in addition to (or maybe instead of) the "breach" element. As noted above, Society highlighted four separate Policy clauses, never mentioned in its opening brief, to make its case for noncompliance. It then argued that because of the alleged noncompliance, it had no obligation to make further payments.

At oral argument, Society's counsel repeatedly claimed that Society's "noncompliance" arguments were simply responsive to points asserted in John & Dave's resistance brief. In one sense, that is certainly true. When one's initial argument is rebutted, a natural "response" is to make another argument. That is exactly what Society did here. Presented with evidence that would seem to raise genuine issues of material fact as to whether it breached the Policy, Society used its reply brief to make a new argument—one that John & Dave had no chance to address.

While that response may be understandable, it is not permissible. I find that with regard to the breach of contract claim, Society very clearly limited its summary judgment arguments to a claim that as a matter of law, it did not breach the Policy. Having not raised John & Dave's alleged noncompliance as an issue in its opening brief, Society is not entitled to make that argument for the first time in its reply brief. As such, I will analyze Society's motion for summary judgment on the breach of contract claim only with regard to the "breach" element.

### b. The Merits Of The "No Breach" Argument.

■ Under Iowa law, a breach of contract occurs "when a party fails to perform

a term of the contract." *See* Iowa Civil Jury Instruction 2400.6 (citing *Sheer Const., Inc. v. W. Hodgman and Sons, Inc.*, 326 N.W.2d 328 (Iowa 1982) and *Metropolitan Transfer Station, Inc. v. Design Structures, Inc.*, 328 N.W.2d 532 (Iowa Ct.App.1982)). Questions of performance or breach are generally for the jury. *See, e.g., Iowa–Illinois Gas & Elec. Co. v. Black & Veatch*, 497 N.W.2d 821, 825 (Iowa 1993); *Taylor Enter., Inc. v. Clarinda Prod. Credit Ass'n*, 447 N.W.2d 113, 115 (Iowa 1989).

■ Based on the summary judgment record, it is clear that there are genuine issues of material fact for the jury to resolve as to whether Society has breached the Policy. Even if Society has paid all amounts *it* believes to be due and owing under the Policy, its determinations are not dispositive. John & Dave has presented evidence, including testimony in the form of sworn affidavits, that could, if believed, permit reasonable jurors to conclude that Society was obligated to pay more. Simply put, the issue of whether Society breached or did not breach the Policy is heavily factual. I could not grant Society's motion on this issue without making impermissible findings concerning the weight and credibility of evidence. Society's motion for summary judgment on John & Dave's breach of contract claim must be denied.

■ In addition, and although I have found that Society is not entitled to rely on its newly-asserted arguments concerning alleged noncompliance, I note that the consideration of those arguments would not have affected this result. Under Iowa law, a party claiming entitlement to coverage under an insurance policy must prove compliance with the policy's terms. *Am. Guar. & Liab. Ins. Co. v. Chandler Mfg. Co.*, 467 N.W.2d 226, 228 (Iowa 1991); *Bruns v. Hartford Accident & Indem. Co.*, 407 N.W.2d 576, 579 (Iowa 1987); *Henschel v. Hawkeye Security Ins. Co.*, 178 N.W.2d 409, 415 (Iowa 1970); *Henderson v. Hawkeye–Security Co.*, 252 Iowa 97, 106 N.W.2d 86, 91 (1960). The insured may meet this burden of proof by showing either: (1) substantial compliance with the condition precedent; (2) the failure to comply was excused or waived; or (3) the failure to comply was not prejudicial to the insurer. *Am. Guar.*, 467 N.W.2d at 228; *Henderson*, 106 N.W.2d at 92. Here, even if Society's noncompliance arguments were properly before me, I would be unable to find, as a matter of law, that John & Dave is not entitled to coverage. Addressing Society's noncompliance arguments would require that I consider such issues as (1) whether John & Dave *substantially* complied with the applicable Policy requirements, (2) whether any lack of compliance was excused or waived and (3) whether Society suffered prejudice due to any noncompliance.[4] Based on the current record, these issues could not be resolved in Society's favor as a matter of law.

### 2. Bad Faith

■ Society contends that John & Dave's claim for insurance bad faith must be dismissed as a matter of law. Under Iowa law, to prevail on a bad faith claim the insured "must prove by substantial evidence (1) the absence of a reasonable basis for denying the claim, and (2) that the defendant knew or had reason to know

---

4. Describing these issues further highlights the unfairness that would result from considering noncompliance arguments made by Society for the first time in its reply brief. John & Dave could be entitled to coverage under the Policy, and perhaps more payments, even

if it failed to strictly comply with various conditions of coverage. However, it had no opportunity to present evidence or raise arguments concerning its alleged noncompliance, or the consequences thereof.

that its denial was without reasonable basis." *Sampson v. Am. Standard Ins. Co.*, 582 N.W.2d 146, 149–50 (Iowa 1998) (citations omitted). The first element is objective while the second is subjective. *Bellville v. Farm Bureau Mut. Ins. Co.*, 702 N.W.2d 468, 473 (Iowa 2005).

With regard to the first element, a reasonable basis exists for denial of policy benefits if the insured's claim is fairly debatable either on a matter of fact or law. *Id.; see also Sampson*, 582 N.W.2d at 150. In *Bellville*, the Iowa Supreme Court explained the "fairly debatable" concept as follows:

> A claim is "fairly debatable" when it is open to dispute on any logical basis.... Stated another way, if reasonable minds can differ on the coverage-determining facts or law, then the claim is fairly debatable.

*Id.* [citations omitted]. The Court further stated:

> Whether a claim is fairly debatable can generally be decided as a matter of law by the court.... That is because "'[w]here an objectively reasonable basis for denial of a claim actually exists, the insurer cannot be held liable for bad faith as a matter of law.'" As one court has explained, "[c]ourts and juries do not weigh the conflicting evidence that was before the insurer; they decide whether evidence existed to justify denial of the claim."

*Id.* at 473–74 [citations omitted]. The fact that the insurer's position is ultimately found to lack merit is not sufficient, by itself, to establish the first element of a bad faith claim. *Thompson v. U.S. Fid. and Guar. Co.*, 559 N.W.2d 288, 292 (Iowa 1997); *Cent. Life Ins. Co. v. Aetna Cas. & Sur. Co.*, 466 N.W.2d 257, 263 (Iowa 1991). An insurance company has the right to debate claims that are fairly debatable without being subject to a bad faith tort claim. *Gardner v. Hartford Ins. Accident*

*& Indem. Co.*, 659 N.W.2d 198, 206 (Iowa 2003). Here, Society argues both (a) that there was not an absence of a reasonable basis to deny John & Dave's claim and (b) that there is no evidence Society knew or had reason to know that the denial was without reasonable basis.

### a. Reasonable Basis

Society's contends there can be no liability for bad faith because, as a matter of law, John & Dave's claim is fairly debatable. Among other things, Society notes that in adjusting the claim, it has relied on the opinions and findings of experts. By contrast, John & Dave argues that Society has failed to pay certain amounts that, according to John & Dave, are not in dispute.

An insurance company has the right to investigate a claim before payment. *See, e.g., Spencer v. Annett Holdings, Inc.*, 905 F.Supp.2d 953, 980 (S.D.Iowa 2012); *St. Paul Reinsurance Co., Ltd. v. Commercial Financial Corp.*, 197 F.R.D. 620, 626 (N.D.Iowa 2000). An insurer is not obligated to disregard its own experts in favor of those retained by its insured. *See, e.g., Bellville*, 702 N.W.2d at 477; *Morgan v. Am. Family Mut. Ins. Co.*, 534 N.W.2d 92, 97 (Iowa 1995), *overruled on other grounds by Hamm v. Allied Mut. Ins. Co.*, 612 N.W.2d 775, 784 (Iowa 2000). Moreover, the Policy provisions discussed earlier address the manner in which a claim is to be investigated and the issue of when payment is due. For example, Society must pay for a covered loss "within 30 days after [it receives] the sworn proof of loss, provided [John & Dave] have complied with all of the terms of this policy," and either (a) the parties have reached agreement about the amount of the loss or (b) an appraisal award has been made. Doc. No. 18–4 at 63–65. John & Dave had a duty to provide information

and to cooperate with Society in the investigation of the claim. *Id.* at 63. Society is entitled to deny coverage in the event of fraud, including any intentional concealment or misstatement of fact. *Id.* at 88–89.

■■■ With these legal authorities and Policy provisions in mind, I find that Society has, as a matter of law, shown that its decisions concerning John & Dave's claim are at least fairly debatable. Or, to put it another way, no aspect of John & Dave's claim is so clearly and obviously owing that Society had no possible, reasonable basis for declining to pay it.

With regard to inventory items, Society correctly notes that John & Dave did not (despite being asked to do so) submit supporting documentation for its claimed pricing of various items. And, in fact, Society has established that the claimed pricing contained at least some errors.[5] The amount of this aspect of the claim is clearly in dispute. As a matter of law, John & Dave cannot show that Society had no reasonable basis for declining to make further payments for food inventory items.

As for damaged equipment, Society retained two different companies to determine which items could be cleaned and re-used. Society correctly points out that disputes still exist as to which items must be replaced. Moreover, pricing remains an issue even with regard to those items that must be replaced. Society retained a pricing expert to evaluate the pricing claimed by John & Dave. That expert provided information that differed substantially from the positions taken by John & Dave. Again, and as a matter of law, John & Dave cannot show that Society had no reasonable basis for declining to make further payments for damaged contents.

On the issue of cleaning expenses, John & Dave alleges bad faith in Society's decision to withhold depreciation until the completion of cleaning has been documented. This argument simply highlights a disagreement between the parties' respective claims adjusters. John & Dave has presented no evidence or legal authorities demonstrating that Society's position on this issue is so clearly wrong as to not be fairly debatable.

With regard to John & Dave's claim for damage to structural improvements, the evidence hardly demonstrates that the claim has been presented in a clear and indisputable manner. Indeed, Society has correctly demonstrated that this item of alleged loss has remained the subject of confusion even after John & Dave filed this lawsuit. In its initial disclosures in this case, John & Dave did not list leasehold improvements as a category of damages, but did list "structural damage" as one of two categories of claimed damages. Doc. No. 28–3 at 14. In an amended disclosure, John & Dave again included structural damage as a category of loss, with a stated claimed amount of $102,515. It also added two additional categories of claimed damages, including one for "business property" with claimed value of $241,076.80. Doc. No. 28–3 at 23. Then, in answers to interrogatories, John & Dave stated that its "business property" category of damages includes leasehold improvements and referenced an estimate prepared by Pierce. *Id.* at 28. That estimate was in a total amount of $102,515—the same amount claimed as being "structural damage." Doc. No. 18–8 at 62–65. Thus, it appears that the $102,515 estimate is being included in both the structural damage claim and the business property claim.

---

**5.** Society points, for example, to 6–packs of ordinary domestic beers that were listed with claimed prices of $10.20, $13.32 and, even, $20.40. John & Dave does not contend that those prices are accurate.

John & Dave has not explained this apparent discrepancy. Nor has it produced evidence otherwise showing that its claim for payment based on structural improvements was so clear and definite that Society had no reasonable basis to investigate further and/or dispute the amount of the claim.

Finally, John & Dave has accurately pointed to an apparent discrepancy concerning its claim for loss of business income. Society does not deny that it agreed to a restoration period of six months but has only paid an amount that (by Society's calculations, at least) covers four months of lost income. However, Society notes that it made the four-month payment in advance, covering September through December of 2011. Society also notes that John & Dave has disputed the calculations of Society's expert, Peters & Associates, concerning the amount of lost income. Society alleges that John & Dave was then nonresponsive on various issues concerning its claim between January and May, 2012, and that it was during this period of time Society developed concerns about possible claim inflation, particularly with regard to the Lawler estimates concerning business equipment. In short, Society contends that the parties never agreed on a final amount of the business income claim and that, due to the Policy language and the issues that arose in 2012, payment never came due.

 As with the other aspects of John & Dave's claim, Society has demonstrated a reasonable basis for disputing the amount of the business income claim. Indeed, for the reasons I have found that John & Dave is entitled to proceed to trial on its breach of contract claim, it is *not* entitled to proceed to trial on the bad faith claim. No aspect of that claim is so clearly and obviously due and owing as to allow reasonable jurors to find that Society acted in bad faith by not paying the amounts

John & Dave demanded. Society has demonstrated a reasonable basis for not making additional payments. Even if the jury ultimately decides that Society should have paid more, that verdict would not establish bad faith under Iowa law. As noted above, "[c]ourts and juries do not weigh the conflicting evidence that was before the insurer; they decide whether evidence existed to justify denial of the claim." *Bellville*, 702 N.W.2d at 474 (quoting *State Farm Lloyds, Inc. v. Polasek*, 847 S.W.2d 279, 285 (Tex.Ct.App.1992)). Society has demonstrated, as a matter of law, that the evidence established a reasonable basis for it to question and dispute the amounts John & Dave has claimed as losses under the Policy.

### b. Knowledge

Because I have already found for Society on the objective element of the bad faith claim, I need not devote significant attention to the other, subjective element. Society had a reasonable basis for its decisions, so it could not have known, or had reason to know, that it was acting without reasonable basis. Both prongs of John & Dave's bad faith claim fail as a matter of law.

### 3. Punitive Damages

 Under Iowa law, an independent tort—above and beyond a mere breach of contract—is required in order to sustain a claim for punitive damages. *See, e.g.,* *White v. Nw. Bell Tel. Co.*, 514 N.W.2d 70, 78 (Iowa 1994). John & Dave acknowledges this and states that its request for punitive damages is "incidental to its claim for bad faith against Society." Doc. No. 21–1 at 17. Because I am granting summary judgment for Society on John & Dave's bad faith claim, and because John & Dave has no other tort claims, its re-

quest for punitive damages fails as a matter of law.

### C. Conclusion—Motion for Summary Judgment

Society's motion for summary judgment will be granted with regard to Counts II and III (unjust enrichment and reasonable expectations) of Article I of the petition, and with regard to Articles II and III of the petition (bad faith and punitive damages). With regard to Article I, Count I (breach of contract), the motion will be denied because there is a genuine issue of material fact as to whether John & Dave is entitled to additional amounts under the Policy. This case will proceed to trial on the breach of contract claim only.

### V. JOHN & DAVE'S MOTION TO STRIKE REPLY

As discussed in Section IV(B)(1)(a), *supra,* Society's reply raised new grounds for summary judgment by arguing, for the first time, that John & Dave cannot establish the "compliance" element of its breach of contract claim. At the same time, however, the reply as a whole was not entirely improper. With regard to the bad faith claim, Society did not change its legal argument but, instead, expanded on that argument and addressed issues raised in John & Dave's resistance. Society's ultimate position on the bad faith claim did not change, as it continued to argue that it is entitled to summary judgment because its denial of John & Dave's claim was fairly debatable.

Rather than strike the entire document, I have determined that the appropriate remedy is to simply disregard Society's improper new arguments concerning the breach of contract claim. As such, the motion to strike reply will be denied.

### VI. CONCLUSION

As explained herein, Society's motion (Doc. No. 18) for summary judgment is:

a. **denied** as to Article I, Count I (breach of contract); and

b. **granted** as to Article I, Counts II and III (unjust enrichment and reasonable expectations) and with regard to Articles II and III (bad faith and punitive damages).

This case will proceed to trial, on the breach of contract claim only, beginning March 17, 2014.

John & Dave's motion (Doc. No. 29) to strike reply is **denied.**

**IT IS SO ORDERED.**

